## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **YETI Coolers, LLC,** | **Case No. 1:16-cv-00264-RP** |
| **Plaintiff,** | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| **v.** | |
| **RTIC Coolers, LLC, RTIC Drinkware, LLC, RTIC Web Services, LLC, Corporate Support & Fulfillment, LLC, John Jacobsen, and James Jacobsen,** | **(1) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271** |
| | **(2) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| **Defendants.** | **(3) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| | **(4) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);** |
| | **(5) TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;** |
| | **(6) COMMON LAW TRADE DRESS INFRINGEMENT;** |
| | **(7) COMMON LAW UNFAIR COMPETITION;** |
| | **(8) COMMON LAW MISAPPROPRIATION; AND** |
| | **(9) UNJUST ENRICHMENT.** |
| | **Jury Trial Demanded** |

## YETI COOLERS, LLC'S FIRST AMENDED COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), hereby amends its complaint as a matter of course pursuant to Rule 15(a)(1)(B). YETI, for its amended complaint against Defendants, RTIC Coolers, LLC ("RTIC Coolers"), RTIC Drinkware, LLC ("RTIC Drinkware"), RTIC Web Services, LLC ("RTIC Web Services"), Corporate Support & Fulfillment, LLC ("CS&F") (collectively "RTIC Defendants"), John Jacobsen, and James Jacobsen ("the Jacobsens") (all collectively "Defendants"), alleges as follows:

**The Parties**

1.      YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 5301 Southwest Parkway, Suite 200, Austin, TX 78735.

2.      RTIC Coolers, LLC is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20702 Hempstead Road, Suite 110, Houston, TX, 77065.

3.      RTIC Drinkware, LLC is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20720 Hempstead Road, Suite 110, Houston, TX, 77065.

4.      RTIC Web Services, LLC is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20720 Hempstead Road, Suite 110, Houston, TX, 77065.

5.      Corporate Support & Fulfillment, LLC is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20720 Hempstead Road, Houston, TX, 77065.

6.      John Jacobsen and James ("Jim") Jacobsen (collectively "the Jacobsens") are the founders of the RTIC Defendants, are the founding managers and owners of RTIC Defendants, are the central figures in the RTIC Defendants (including both before and after the RTIC Defendants were incorporated), and are actively involved in running and directing the business of the RTIC Defendants.

7.      On information and belief, John Jacobsen resides at 14130 Sherburn Manor Drive, Cypress, TX, 77429.

8.     On information and belief, Jim Jacobsen has a residence at 3 Brywood Place, The Woodlands, TX, 77382.

## Jurisdiction and Venue

9.     This is an action for patent infringement, trade dress infringement, unfair competition and false designation of origin, trade dress dilution, misappropriation, and unjust enrichment.  This action arises under the Patent Act, 35 U.S.C. § 1, *et seq.*, the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("the Lanham Act"), federal common law, the Texas Business & Commerce Code, and state common law, including the law of Texas.

10.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

11.     This Court has personal jurisdiction over the Defendants because, *inter alia*, each of the RTIC Defendants are incorporated in the State of Texas, each of the RTIC Defendants has its principal places of business in the State of Texas, the Jacobsens reside in the State of Texas, and the Defendants have done and are doing business in the State of Texas, including in this District.  For example, and as discussed in more detail below, the Defendants have advertised, promoted, offered for sale, sold, and distributed, and continue to advertise, promote, offer for sale, sell, and distribute infringing products to customers and potential customers, including through the RTIC Defendants' principal website, https://www.rticcoolers.com/ ("RTIC Coolers Website"), and, on information and belief, the Defendants' tortious acts giving rise to this lawsuit are occurring in the State of Texas, including in this District, and  Defendants' customers and/or potential customers reside in the State of Texas, including in this District.

12.     Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

## General Allegations – YETI's Trade Dress

13.     For many years, YETI has continuously engaged in the development, manufacture, and sale of premium, heavy-duty insulated drinkware.  YETI created unique, distinctive, and non-functional designs to use with YETI's insulated drinkware.

14.     Among other intellectual property, YETI owns U.S. Design Patent No. D752,397 ("the '397 patent") related to the YETI Rambler™ Colster® beverage holder.  The '397 patent is entitled "Beverage Holder."  On March 29, 2016, the '397 patent was duly and legally issued by the U.S. Patent Office to YETI.  YETI owns the entire right, title, and interest to the '397 patent. A copy of the '397 patent is attached as Exhibit 1. An exemplary view of the claim of the '397 patent is displayed in Illustration 1 below.

| Illustration 1:  Exemplary View of YETI's '397 Patent Claim. |
| --- |
|  |

15.     YETI also owns trade dress rights relating to the source identifying features of its insulated drinkware designs.  YETI has extensively and continuously promoted and used its designs for years in the United States and in Texas.  Through that extensive and continuous promotion and use, YETI's designs have become well-known indicators of the origin and quality

4

of YETI's insulated drinkware products. YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous.

16.   Specifically, YETI sells the following insulated drinkware products, the "YETI 30 oz. Rambler™ Tumbler," the "YETI Rambler™ Colster®" beverage holder, and the "YETI Rambler™ Lowball." Hereinafter these are referred to as "the Rambler™ Drinkware." YETI has invested substantially in the design, development, manufacture, and marketing of the Rambler™ Drinkware.

17.   YETI has enjoyed significant sales of the Rambler™ Drinkware throughout the United States, including sales to customers in the state of Texas. YETI has expended significant resources advertising and marketing the Rambler™ Drinkware.

18.   The Rambler™ Drinkware designs also have distinctive and non-functional features that identify to consumers that the origin of the Rambler™ Drinkware is YETI. As a result of at least YETI's continuous and exclusive use of the Rambler™ Drinkware, YETI's marketing, advertising, and sales of the Rambler™ Drinkware, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Rambler™ Drinkware, which consumers have come to uniquely associate with YETI. YETI's trade dress rights in the designs and appearances of the Rambler™ Drinkware are collectively referred to as "YETI's Trade Dress."

19.   Illustration 2 below shows an exemplary image of a YETI Rambler™ Colster® beverage holder sold by YETI.

**Illustration 2:  Exemplary Image of a YETI Rambler™ Colster® beverage holder.**



20.    YETI has trade dress rights in the overall look and appearance of the YETI Rambler™ Colster® beverage holder, including, but not limited to, the visual flow of the YETI Rambler™ Colster® beverage holder; the curves, tapers, and lines in the YETI Rambler™ Colster® beverage holder; the design, style and appearance of these curves, tapers, and lines in the YETI Rambler™ Colster® beverage holder; the visual connection and relationship between the curves, tapers, and lines in the YETI Rambler™ Colster® beverage holder; the style, design and appearance of design aspects of the YETI Rambler™ Colster® beverage holder; the design and appearance of the walls of the YETI Rambler™ Colster® beverage holder; the design and appearance of the rim of the YETI Rambler™ Colster® beverage holder; the design and appearance of the gasket of the YETI Rambler™ Colster® beverage holder; the design, appearance, and placement of the top plane of the gasket of the YETI Rambler™ Colster® beverage holder; the design, appearance, and placement of the side walls of the container and the side walls of the gasket of the YETI Rambler™ Colster® beverage holder; the design, appearance, and placement of the style line around the base of the YETI Rambler™ Colster® beverage holder; the design and appearance of the bottom of the YETI Rambler™ Colster® beverage holder; the color contrast and color combinations of the container of the YETI

Rambler™ Colster® beverage holder and the gasket of the YETI Rambler™ Colster® beverage holder; and the overall look and appearance of the container and the container with the gasket that YETI uses in connection with the YETI Rambler™ Colster® beverage holder.

21.     Illustration 3 below shows an exemplary image of a YETI 30 oz. Rambler™ Tumbler sold by YETI.

| **Illustration 3:  Exemplary Image of a YETI 30 oz. Rambler™ Tumbler.** |
| --- |
|  |

22.     YETI has trade dress rights in the overall look and appearance of the YETI 30 oz. Rambler™ Tumbler, including, but not limited to, the visual flow of the YETI 30 oz. Rambler™ Tumbler; the curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler; the design, style, and appearance of these curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler; the visual connection and relationship between the curves, tapers, and lines in the YETI 30 oz. Rambler™ Tumbler; the style, design, and appearance of design aspects of the YETI 30 oz. Rambler™ Tumbler; the design and appearance of the walls of the YETI 30 oz. Rambler™ Tumbler; the design and appearance of the rim of the YETI 30 oz. Rambler™ Tumbler; the

design, appearance, and placement of the taper in the side wall of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the style line around the base of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 30 oz. Rambler™ Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 30 oz. Rambler™ Tumbler; the color contrast and color combinations of the YETI 30 oz. Rambler™ Tumbler and the tumbler lid on the YETI 30 oz. Rambler™ Tumbler; and the overall look and appearance of the tumbler and the tumbler with the tumbler lid that YETI uses in connection with the YETI 30 oz. Rambler™ Tumbler.

23.    Illustration 4 below shows an exemplary image of a YETI Rambler™ Lowball sold by YETI.

| Illustration 4:  Exemplary Image of a YETI Rambler™ Lowball. |
| --- |
|  |

24.    YETI has trade dress rights in the overall look and appearance of the YETI Rambler™ Lowball, including, but not limited to, the visual flow of the YETI Rambler™ Lowball; the curves, tapers, and lines in the YETI Rambler™ Lowball; the design, style and

appearance of these curves, tapers, and lines in the YETI Rambler™ Lowball; the visual connection and relationship between the curves, tapers, and lines in the YETI Rambler™ Lowball; the style, design and appearance of design aspects of the YETI Rambler™ Lowball; the design and appearance of the walls of the YETI Rambler™ Lowball; the design and appearance of the rim of the YETI Rambler™ Lowball; the design, appearance, and placement of the taper in the side wall of the YETI Rambler™ Lowball; the design, appearance, and placement of the style line around the base of the YETI Rambler™ Lowball; the design, appearance, and placement of the tab on the lid of the YETI Rambler™ Lowball; the design, appearance, and placement of the drinking opening on the lid of the YETI Rambler™ Lowball; the design, appearance, and placement of the top plane of the lid of the YETI Rambler™ Lowball; the design, appearance, and placement of the side walls of the lid of the YETI Rambler™ Lowball; the color contrast and color combinations of the YETI Rambler™ Lowball and the tumbler lid on the YETI Rambler™ Lowball; and the overall look and appearance of the tumbler and the tumbler with the tumbler lid that YETI uses in connection with the YETI Rambler™ Lowball.

25.     As a result of YETI's exclusive, continuous and substantial use, advertising, and sales of insulated drinkware products bearing YETI's Trade Dress, and the publicity and attention that has been paid to YETI's Trade Dress, YETI's Trade Dress have become famous and have acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate them as source identifiers of YETI.

26.     In addition to the Rambler™ Drinkware described above, YETI sells additional insulated drinkware products.  These include the YETI 20 oz. Rambler™ Tumbler, the YETI 64 oz. Rambler™ Bottle, the YETI 36 oz. Rambler™ Bottle, and the YETI 18 oz. Rambler™ Bottle. Illustrations 5-8 below show exemplary images of these YETI products.

**Illustration 5:  Exemplary Image of a YETI 20 oz. Rambler™ Tumbler.**



**Illustration 6:  Exemplary Image of a YETI 64 oz. Rambler™ Bottle.**



**Illustration 7:  Exemplary Image of a YETI 36 oz. Rambler™ Bottle.**



| Illustration 8:  Exemplary Image of a YETI 18 oz. Rambler™ Bottle. |
|---|
|  |

### General Allegations – Defendants' Unlawful Activities

### Defendants' Infringing Drinkware

27.     Defendants have purposefully advertised, promoted, offered for sale, sold, and distributed, and continue to advertise, promote, offer for sale, sell, and distribute drinkware products that violate YETI's rights, including the rights protected by the '397 patent and YETI's Trade Dress.  On information and belief, Defendants also are making or having made and/or importing the infringing products into the United States.  Defendants' infringing products are confusingly similar imitations of YETI's products.  Defendants' actions have all been without the authorization of YETI.

28.     Illustrations 9-12 below show examples of Defendants' infringing products.

| **Illustration 9:  Exemplary Image of RTIC "Can" Infringing Product.** |
|:---:|
|  |
| **Illustration 10:  Exemplary Image of RTIC 30 oz. Infringing Product.** |
|  |
| **Illustration 11:  Exemplary Image of RTIC 20 oz. Infringing Product.** |
|  |
| **Illustration 12:  Exemplary Image of RTIC Lowball Infringing Product.** |
|  |

29.     On information and belief, the Jacobsens are responsible for overseeing the Defendants' infringing insulated drinkware products, including design, advertising, marketing, and sales.

30.     On information and belief, the Jacobsens personally participated in the design of the Defendants' infringing products, including authorizing, directing, and approving the design of the Defendants' infringing products.

31.     Infringing tumblers are promoted, offered for sale and sold on the RTIC Coolers Website.

32.     According to allegations made by Defendants in other court filings, the RTIC Coolers Website has been owned, operated and maintained by RTIC Web Services since March 7, 2016, and, prior to March 7, 2016, the RTIC Coolers Website was owned and operated by CS&F.

33.     Infringing tumblers are promoted and advertised on the "RTIC Coolers" Facebook page.

34.     According to allegations made by Defendants in other court filings, the RTIC Coolers Facebook page has been maintained by RTIC Web Services since March 7, 2016 and, prior to March 7, 2016, the RTIC Coolers Website was maintained by CS&F.

35.     According to allegations made by Defendants in other court filings, RTIC Drinkware promotes and offers for sale, including on the RTIC Coolers Website, the infringing RTIC drinkware products accused in this case, the RTIC "Can" Infringing Product, the RTIC 30 oz. Infringing Product, the RTIC 20 oz. Infringing Product, and the RTIC Lowball Infringing Product, shown in Illustrations 9-12.

36.     RTIC Coolers sells and promotes infringing drinkware products, including on the RTIC Coolers Website and RTIC Coolers' Facebook page.

37.     When a customer orders infringing drinkware from the RTIC Coolers Website, RTIC Coolers sends the customer an email confirming that the entity that will charge the customer's credit card is "RTIC Coolers LLC."  For example, below is an image from an RTIC Coolers order confirmation for a purchase of three infringing RTIC-branded 30 oz. tumbler products on March 1, 2016, the day before YETI filed its initial Complaint.  (Ex. 2).



**Order Confirmation Excepts Authorizing Charges to RTIC Coolers LLC for 30 oz. RTIC Infringing Tumblers (Ex. 2) (annotations added)**

38.     The purchase confirmation states that "[b]y ordering products, *you have authorized RTIC Coolers LLC to charge your credit card* . . . for an amount equal to the purchase price and any applicable sales tax."  (Ex. 2).

39.     The purchase confirmation is titled as a "RTIC Coolers Order," is from "RTIC Coolers <help@rticcoolers.com>," and is signed by "Your RTIC Coolers Customer Service Team." (*Id.*).

40.     The purchase confirmation provides a link for the buyer to "Contact Us" and another link to "contact Customer Service," both of which direct the customer to the RTIC Coolers Website "Contact Us" page that lists "RTIC Coolers LLC" as the contact, as shown below.   (*Id.*; Ex. 3). The "Contact Us" page does not identify RTIC Drinkware or any other RTIC entity.

| |
|---|
| **Corporate Headquarters** |
| RTIC Coolers LLC |
| 20702 Hempstead Road, Suite 110 |
| Houston, Texas 77065 |

**RTIC Coolers LLC listed as Corporate Headquarters on "Contact Us" page on RTIC Coolers Website, captured on May 3, 2016  (Ex. 3)**

41.     Likewise order confirmations for multiple infringing drinkware products purchased on March 11, 2016 (*i.e.* the RTIC-branded 20 oz. tumbler, 10 oz. lowball and koozie product) and again for multiple infringing products purchased on May 12, 2016 (*i.e.* the RTIC-branded 30 oz. and 20 oz. tumblers, 10 oz. lowball and koozie product) provide the same information as the March 1 order confirmation shown above, including the statement that "By ordering products, you have authorized RTIC Coolers LLC to charge your credit card …." (Exs. 4 and 5).

42.     The charges that appeared on the statements for the credit/debit cards used for the March 1, March 11, and May 12, 2016, purchases confirm that "RTIC Coolers" receives payment for the infringing drinkware products.  (Ex. 6).



**Redacted Excerpts of Charges to RTIC COOLERS for RTIC Infringing Drinkware Products (Ex. 6) (emphasis added)**

43.     RTIC Coolers stated on the RTIC Coolers Website, through which it sells infringing tumblers, that RTIC Coolers operates the website and that the services provided on the RTIC Coolers Website are provided by RTIC Coolers LLC.

44.     The "Privacy Policy" page of the RTIC Coolers Website on February 12, 2016, stated: "Thank you for accessing the RTICCoolers.com Website ("Site") operated by RTIC Coolers LLC."  (Ex. 7).

## Privacy Policy

Shop With Confidence! Protecting Your Personal Information Privacy Policy
Last updated: August 8, 2015.

Thank you for accessing the RTICCoolers.com Website ("Site") operated by RTIC Coolers LLC We respect y
our privacy and want to protect your personal information. To learn more, please read this Privacy Pol
icy.

**RTIC Coolers Website Operated by RTIC Coolers LLC According to "Privacy Policy" page on RTIC Coolers Website, captured on February 12, 2016 (Ex. 7) (annotation added)**

45.     The "Terms of Use" page of the RTIC Coolers Website on February 12, 2016, stated: "RTIC Coolers LLC provides services …."   (Ex. 8)

**RTIC Coolers LLC Provides Services According to Excerpt of "Terms of Use" page on RTIC Coolers Website, captured on February 12, 2016 (Ex. 8) (annotation added)**

46.     Even today, after the formation of RTIC Web Services, the RTIC Coolers Website boasts about RTIC Coolers' involvement with tumblers and drinkware products. For example, the RTIC Coolers Website homepage proclaims that "***RTIC Coolers is a leading direct to consumer retailer*** of premium rotomolded coolers & ***stainless steel tumblers.***" (*See, e.g.,* Ex. 9).



**RTIC Coolers Touted as Leading Retailer of Stainless Steel Tumblers on Website Homepage of rticcoolers.com, captured on May 3, 2016 (Ex. 9) (emphasis added)**

47.     The RTIC Coolers Website currently identifies "RTIC Coolers LLC" as the contact entity for the RTIC Coolers Website.  (Ex. 10).

48.     The RTIC Coolers Website continues to direct customers to return tumbler products to "RTIC Coolers Attention: Returns" (Ex. 11):

RTIC Coolers

Attention: Returns

20702 Hempstead Road, Suite 110

Houston, Texas 77065

**RTIC Coolers listed on "Return Policy" page on RTIC Coolers Website, captured on May 16, 2016 (Ex. 11)**

49.     Prior to March 7, 2016, the RTIC Coolers Website itself repeatedly and expressly identified "RTIC Coolers LLC" as the proprietor and operator of the site then.

50.     The RTIC Coolers Facebook Page continually promotes drinkware products under the "RTIC Coolers" account name and repeatedly links the infringing cooler and drinkware products together. As representative examples only, "RTIC Coolers" has made the following posts on the Facebook page since all of the infringing drinkware products were made available for sale:



**RTIC Coolers Facebook Posts About Tumblers - Excerpts of RTIC Coolers Facebook Posts (Exs. 12 and 13)**

51.     The RTIC Coolers Facebook page first advertised and promoted the RTIC-branded infringing 30 oz. tumblers on November 18, 2015.  (Ex. 14).



**RTIC Coolers Facebook Page Promoting Infringing 30 oz. Tumbler from November 18, 2015 (Ex. 14)**

52.     As a result of Defendants' activities related to the infringing products, there is a strong likelihood of confusion between Defendants and their products on the one hand, and YETI and its products on the other hand.  On information and belief, the Jacobsens are and have been principal decision makers involving the design, promotion, advertising, offer for sale and sale of the infringing products, and they have approved and authorized the RTIC Defendants' actions.

53.     YETI used YETI's Trade Dress extensively and continuously before Defendants began advertising, promoting, selling, offering to sell, or distributing Defendants' infringing products.  Moreover, YETI's Trade Dress became famous and acquired secondary meaning in the United States and in the State of Texas generally and in geographic areas in Texas before Defendants commenced unlawful use of YETI's Trade Dress.

54.     As discussed above and as set forth in the counts below, Defendants' actions are unfair and unlawful.

## **Defendants' Plans to Sell Additional Drinkware Products**

55.     Additionally, as shown in, for example, screen shots from the RTIC Coolers Facebook and Instagram Pages attached as Exhibit 15, Defendants have informed consumers that Defendants plans to sell additional items as part of its drinkware line, namely 3 sizes of bottles that include the RTIC 18 oz. bottle, the RTIC 64 oz. growler, and another bottle.

56.     The RTIC 18 oz. bottle is in the same size as the YETI 18 oz. Rambler™ Bottle. The RTIC 64 oz. growler is in the same size as the YETI 64 oz. Rambler™ Bottle.  The YETI 18 oz. Rambler™ Bottle, YETI 36 oz. Rambler™ Bottle, and the YETI 64 oz. Rambler™ Bottle have been on the market, available to consumers, and, on information and belief, known to Defendants since prior to the Defendants' introduction of the RTIC Bottles, including at least the 18 oz. bottle and 64 oz. growler.

57.     To the extent that these additional RTIC-branded products violate YETI's rights, including YETI's intellectual property rights, YETI intends to take action.

## **Count I:**
## **Patent Infringement Under 35 U.S.C. § 271**

58.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 57 as though fully set forth herein.

59.     Defendants have infringed and continue to infringe the '397 patent at least by using, selling, and offering to sell the RTIC "Can" beverage holders, as identified in paragraph 28, and, on information and belief, by making and/or importing into the United States the RTIC "Can" beverage holders and/or actively inducing infringement by assisting, overseeing, directing, and personally participating in the design, marketing, advertising, and sales of the RTIC "Can" beverage holders.

60.     Defendants' acts of infringement have been without express or implied license by YETI, are in violation of YETI's rights, and will continue unless enjoined by this Court.

61.     On information and belief, Defendants have been made aware of and had knowledge of the '397 patent, and the Defendants' infringement of the '397 patent has been, and continues to be, with full knowledge of the '397 patent and is a deliberate and willful infringement thereof.

62.     This is an exceptional case in view of Defendants' activities and blatant infringement.

63.     YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief at least under at least 35 U.S.C. §§ 281, 284, 285, and 289.

64.     Defendants have caused, are causing, and will continue to cause irreparable harm to YETI for which there is no adequate remedy at law and for which YETI is entitled to injunctive relief under at least 35 U.S.C. § 283.

### Count II:
### Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

65.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 64 as though fully set forth herein.

66.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing YETI's Trade Dress.  Defendants' use of YETI's Trade Dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with YETI and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

67.     YETI's Trade Dress is entitled to protection under the Lanham Act.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its Trade Dress in the United States.  Through that extensive and continuous use, YETI's Trade Dress has become a well-known indicator of the origin and quality of YETI's insulated drinkware products. YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of YETI's Trade Dress in connection with the infringing products.

68.     Defendants' use of YETI's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.

69.     On information and belief, Defendants' use of YETI's Trade Dress has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 2-4 and 9-12 above, and by Defendants' continuing disregard for YETI's rights.

70.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Defendants' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count III:
## Unfair Competition and False Designation of Origin Under § 43(a)
## of the Lanham Act, 15 U.S.C. § 1125(a)

71.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 70 as though fully set forth herein.

72.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to Defendants' use of YETI's Trade Dress and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

73.     YETI's Trade Dress is entitled to protection under the Lanham Act.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its Trade Dress in the United States.  Through that extensive and continuous use, YETI's Trade Dress has become a well-known indicator of the origin and quality of YETI's insulated drinkware products.  YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of YETI's Trade Dress in connection with the infringing products.

74.     Defendants' use of YETI's Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.

75.     On information and belief, Defendants' use of YETI's Trade Dress has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 2-4 and 9-12 above, and by Defendants' continuing disregard for YETI's rights.

76.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count IV:**
**Trade Dress Dilution Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

77.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

78.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violate § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

79.     YETI's Trade Dress is entitled to protection under the Lanham Act.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI's Trade Dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of YETI's Trade Dress in the United States.  Through that extensive and continuous use, YETI's Trade Dress has become a famous well-known indicator of the origin and quality of YETI's insulated drinkware products throughout the United States, and is widely recognized by the general

24

consuming public as a designation of the source of YETI and YETI's insulated drinkware products.   YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.   Moreover, YETI's Trade Dress became famous and acquired this secondary meaning before Defendants commenced their unlawful use of YETI's Trade Dress in connection with the infringing products.

80.     Defendants' use of YETI's Trade Dress is likely to cause, and has caused, dilution of YETI's famous trade dress, at least by eroding the public's exclusive identification of YETI's famous Trade Dress with YETI and YETI's insulated drinkware products, by lessening the capacity of YETI's famous Trade Dress to identify and distinguish YETI's insulated drinkware products, by associating YETI's Trade Dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous Trade Dress.

81.     Defendants' use of YETI's Trade Dress has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.

82.     On information and belief, Defendants' use of YETI's Trade Dress has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 2-4 and 9-12 above, and by Defendants' continuing disregard for YETI's rights.

83.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

## Count V:
## Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103

84.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 83 as though fully set forth herein.

85.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products violate § 16.103 of the Texas Business & Commerce Code.

86.     YETI's Trade Dress is entitled to protection under Texas law.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its Trade Dress in the United States and in the State of Texas. Through that extensive and continuous use, YETI's Trade Dress has become famous and a well-known indicator of the origin and quality of YETI's insulated drinkware products in the United States and in the State of Texas and in geographic areas in Texas, and YETI's Trade Dress is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of YETI and YETI's insulated drinkware products.  YETI's Trade Dress also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas.  Moreover, YETI's Trade Dress became famous and acquired this secondary meaning before Defendants commenced their unlawful use of YETI's Trade Dress in connection with the infringing products.

87.     Defendants' use of YETI's Trade Dress and colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous Trade Dress at least by eroding the public's exclusive identification of YETI's famous Trade Dress with YETI, by lessening the capacity of YETI's famous Trade Dress to identify and distinguish YETI's insulated drinkware products, by associating YETI's Trade Dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous Trade Dress.

26

88.    Defendants' use of YETI's Trade Dress, and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.

89.    On information and belief, Defendants' use of YETI's Trade Dress has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 2-4 and 9-12 above, and by Defendants' continuing disregard for YETI's rights.

90.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

**Count VI:**
**Common Law Trade Dress Infringement**

91.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 90 as though fully set forth herein.

92.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law trade dress infringement, at least because Defendants' use of YETI's Trade Dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

93.     YETI's Trade Dress is entitled to protection under the common law.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its Trade Dress in the United States and the State of Texas. Through that extensive and continuous use, YETI's Trade Dress has become a well-known indicator of the origin and quality of YETI's insulated drinkware products.  YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of YETI's Trade Dress in connection with the infringing products.

94.     Defendants' use of YETI's Trade Dress, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.

95.     On information and belief, Defendants' use of YETI's Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 2-4 and 9-12 above, and by Defendants' continuing disregard for YETI's rights.

96.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

**Count VII:**
**Common Law Unfair Competition**

97.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 96 as though fully set forth herein.

28

98.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law unfair competition, at least by palming off/passing off of Defendants' goods, by simulating YETI's Trade Dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.  Defendants have also interfered with YETI's business.

99.     YETI's Trade Dress is entitled to protection under the common law.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's Trade Dress has become a well-known indicator of the origin and quality of YETI's insulated drinkware products.  YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of YETI's Trade Dress in connection with the infringing products.

100.    Defendants' use of YETI's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.

101.    On information and belief, Defendants' use of YETI's Trade Dress has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 2-4 and 9-12 above, and by Defendants' continuing disregard for YETI's rights.

29

102.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

**Count VIII:**
**Common Law Misappropriation**

103.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 102 as though fully set forth herein.

104.    Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute common law misappropriation.

105.    YETI created the products covered by YETI's Trade Dress through extensive time, labor, effort, skill, and money.  Defendants have wrongfully used YETI's Trade Dress, and/or colorable imitations thereof in competition with YETI and gained a special advantage because Defendants were not burdened with the expenses incurred by YETI.  Defendants have commercially damaged YETI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

106.    YETI's Trade Dress is entitled to protection under the common law.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's Trade Dress has become a well-known indicator of the origin and quality of YETI's insulated drinkware products.  YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's

30

Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of YETI's Trade Dress in connection with the infringing products.

107.     Defendants' use of YETI's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.  Moreover, as a result of its misappropriation, Defendants have profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill associated with YETI's Trade Dress with YETI and YETI's drinkware products.

108.     Defendants' misappropriation of YETI's Trade Dress has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 2-4 and 9-12 above, and by Defendants' continuing disregard for YETI's rights.

109.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## Count IX:
## Unjust Enrichment

110.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 109 as though fully set forth herein.

111.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the infringing products, in direct competition with YETI, constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at YETI's expense.  Defendants have also, *inter alia*, operated with an undue advantage.

31

112.    YETI created the products covered by YETI's Trade Dress through extensive time, labor, effort, skill, and money.  Defendants have wrongfully used and are wrongfully using YETI's Trade Dress, and/or colorable imitations thereof, in competition with YETI, and have gained and are gaining a wrongful benefit by undue advantage through such use.  Defendants have not been burdened with the expenses incurred by YETI, yet Defendants are obtaining the resulting benefits for their own business and products.

113.    YETI's Trade Dress is entitled to protection under the common law.  YETI's Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's Trade Dress has become a well-known indicator of the origin and quality of YETI's insulated drinkware products.  YETI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of YETI's Trade Dress and colorable imitations thereof in connection with the infringing products.

114.    Defendants' use of YETI's Trade Dress, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's Trade Dress with YETI and YETI's drinkware products.  YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Defendants have wrongfully obtained and are wrongfully obtaining a benefit at YETI's expense by taking undue advantage

and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

115.    Defendants' unjust enrichment at YETI's expense has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the infringing products to YETI's Trade Dress, as demonstrated in, for example, Illustrations 2-4 and 9-12 above, and by Defendants' continuing disregard for YETI's rights.

116.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits.

**Demand for Jury Trial**

117.    YETI hereby demands a jury trial on all issues so triable.

**Relief Sought**

WHEREFORE, Plaintiff respectfully prays for:

1.    Judgment that Defendants have (i) infringed the '397 patent in violation of § 271 of Title 35 in the United States Code; (ii) infringed YETI's Trade Dress in violation of § 1125(a) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) diluted YETI's Trade Dress in violation of § 1125(c) of Title 15 in the United States Code; (v) diluted YETI's Trade Dress in violation of Tex. Bus. & Com. Code § 16.103; (vi) violated YETI's common law rights in YETI's Trade Dress; (vii) engaged in common law unfair competition; (viii) engaged in common law misappropriation; and (ix) been unjustly enriched at YETI's expense, and that these wrongful activities by Defendants were willful;

2.    An injunction against further infringement of the '397 patent, further infringement and dilution of YETI's Trade Dress, further acts of unfair competition, misappropriation, and

unjust enrichment by Defendants and each of their managers, founding managers (including but not limited to John Jacobsen and James Jacobsen), agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of the '397 patent or YETI's Trade Dress, pursuant to at least 35 U.S.C. § 283, 15 U.S.C. § 1116 and Tex. Bus. & Com. Code § 16.104;

3.      An Order directing Defendants to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.      An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's Trade Dress in Defendants' possession or control, (iii) all plates, molds, and other means of making the infringing products in Defendants' possession, custody, or control, and (iv) all advertising materials related to the infringing products in Defendants' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.      An Order directing Defendants' to publish a public notice providing proper attribution of YETI's Trade Dress to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6.      An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.     An award of damages adequate to compensate YETI for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, or an award of Defendants' profits from their patent infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with prejudgment interest and costs and reasonable attorney fees, pursuant to 35 U.S.C. §§ 284 and 285.

8.     An award of Defendants' profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 11125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104; and

9.     Such other and further relief as this Court deems just and proper.


Dated:  May 16, 2016                     Respectfully submitted,



                                        By:/s/ J. Pieter van Es
                                        Kevin Meek
                                        Texas Bar No. 13899600
                                        kevin.meek@bakerbotts.com
                                        Baker Botts L.L.P.
                                        98 San Jacinto Blvd., Suite 1500
                                        Austin, Texas 78701
                                        Telephone: (512) 322-2639
                                        Facsimile: (512) 322-8385

                                        Joseph J. Berghammer (*pro hac vice*)
                                        Illinois Bar No. 6273690
                                        jberghammer@bannerwitcoff.com
                                        J. Pieter van Es (*pro hac vice*)
                                        Illinois Bar No. 6210313
                                        pvanes@bannerwitcoff.com
                                        Michael L. Krashin (*pro hac vice*)
                                        Illinois Bar No. 6286637
                                        mkrashin@bannerwitcoff.com
                                        Sean J. Jungels (*pro hac vice*)

Illinois Bar No. 6303636
sjungels@bannerwitcoff.com
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2016, I caused the foregoing document to be electronically filed with the Clerk of the Court pursuant to the Electronic Filing Procedures and using the CM/ECF system, and that a true and correct electronic copy was thereby caused to be served on the following counsel for RTIC Coolers, LLC:

Bailey K. Karris
bharris@fr.com
FISH & RICHARDSON P.C.
1221 McKinney, Suite 2800
Houston, TX 77010

W. Thomas Jacks
jacks@fr.com
FISH & RICHARDSON P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701

Neil J. McNabnay
mcnabnay@fr.com
Thomas M. Melsheimer
melsheimer@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201

/s/ J. Pieter van Es
FOR YETI COOLERS, LLC