IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YETI COOLERS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:16-CV-264-RP |
| | § | |
| RTIC COOLERS, LLC, RTIC | § | |
| DRINKWARE, LLC, RTIC WEB | § | |
| SERVICES, LLC, CORPORATE SUPPORT | § | |
| & FULFILLMENT, LLC, JOHN | § | |
| JACOBSEN, and JAMES JACOBSEN, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are Defendants John Jacobsen and James Jacobsen's Motion to Dismiss (Dkt. 24), Plaintiff YETI Cooler, LLC's response to the motion to dismiss, and defendants' reply. After reviewing these filings, the relevant law, and the factual record, the Court issues the following order.

**I. BACKGROUND**

Plaintiff YETI Coolers, LLC ("YETI") filed suit against Defendant RTIC Coolers, LLC ("RTIC Coolers") on March 2, 2016, alleging that RTIC Coolers copied the trade dress and design of YETI's insulated drinkware products, including its 20 oz. and 30 oz. tumblers. YETI brought eight claims against RTIC Coolers: (1) trade dress infringement under 15 U.S.C. § 1125(a), (2) unfair competition and false designation of origin under 15 U.S.C. § 1125(a), (3) trade dress dilution under 15 U.S.C. § 1125(c), (4) trade dress dilution under Texas Business and Commerce Code § 16.103, and common law claims for (5) trade dress infringement, (6) unfair competition, (7) misappropriation, and (8) unjust enrichment.

1

On May 16, 2016, YETI filed its first amended complaint ("the Complaint"). The Complaint

added five additional defendants: RTIC Web Services, LLC, Corporate Support & Fulfillment, LLC,

RTIC Drinkware, LLC, and John Jacobsen, and James Jacobsen ("the Jacobsens"). The Complaint

also added a claim for patent infringement under 35 U.S.C § 271, for its '397 patent, related to the

YETI Rambler™ Colster® beverage holder, against all defendants. On June 13, 2016, the Jacobsens

filed a motion to dismiss YETI's newly-added patent infringement claim, arguing that the Complaint

did not include sufficient facts for the Jacobsens to be held liable. YETI filed a response on June 27,

2016, and the Jacobsens replied on July 7, 2016. The Court now considers the Jacobsens' motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he

'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby

Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Although Federal Rule of

Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim

showing that the pleader is entitled to relief," this standard demands more than unadorned

accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action,"

or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." *Id.* at 570. The court must initially identify

allegations in the complaint that are no more than legal conclusions or "[t]hreadbare recitals of a

cause of action's elements," then assume the veracity of well-pleaded factual allegations and

"determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662,

678–79 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

The only claim at issue in the pending motion to dismiss is YETI's claim against the Jacobsens for patent infringement under 35 U.S.C. § 271 for its '397 patent, related to the YETI Rambler™ Colster® beverage holder. Section 271 provides for liability for patent infringement. Liability for direct infringement is provided by subsection (a), which states, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Liability for infringement by inducement is provided by subsection (b), which states, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." *Id.* § 271(b).

The Jacobsens argue that YETI has failed to allege that the Jasobsens infringed on the '397 patent, under either § 271(a), direct infringement, or § 271(b), induced infringement. First, the Jacobsens assert that YETI must allege facts sufficient to pierce the corporate veil in order for a claim of direct patent infringement against them to survive, and that YETI has not done so. Second, the Jacobsens argue that the Complaint does not contain sufficient factual allegations regarding intent to allege that the Jacobsens have induced patent infringement.

YETI responds that it is not necessary to pierce the corporate veil in order for individuals to be held directly liable for patent infringement, and that the Complaint alleges sufficient facts with respect to claims of direct infringement and inducement. The Court will first address YETI's claim of direct patent infringement against the Jacobsens, including the issue of whether the corporate veil must be pierced for a claim of direct infringement against corporate officers to survive, and second, it will address YETI's claim of inducement to infringe against the Jacobsens.

A. Direct Infringement

The parties' primary dispute is whether the Federal Circuit requires piercing the corporate veil for a claim of direct infringement by a corporate officer. The case law from the Federal Circuit on this issue is not entirely consistent, but after thoroughly reviewing existing case law, the Court must accept the Jacobsens' argument that piecing the corporate veil is required for personal liability for direct patent infringement by corporate officers. At least three opinions by the Federal Circuit have found such a requirement expressly. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 554 (Fed. Cir. 1990) ("[T]o be personally liable for . . . infringement under section 271(a), there must be evidence to justify piercing the corporate veil."); *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1331) (Fed. Cir. 1999) ("Personal liability under § 271(a) . . . requires sufficient evidence to justify piercing the corporate veil." (citing *Manville*, 917 F. 2d 544)); *Wordtech Systems, Inc. v. Integrated Networkds Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) ("[T]he 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'").

YETI argues that these cases should be disregarded for two main reasons. First, YETI contends that before the Federal Circuit announced that veil piecing was required, it had in fact held the opposite—that veil piecing was not required for direct infringement. Because the Federal Circuit treats as binding its prior decisions "unless and until overruled by an intervening Supreme Court or en banc decision," *Deckers Corp. v. U.S.*, 752 F.3d 949, 964 (Fed. Cir. 2014), and requires that "[w]here there is a direct conflict, the precedential decision is the first," *Newman Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988), YETI insists that the prior rule, and not the later one, is binding on this Court.

Specifically, YETI points to *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565 (Fed. Cir. 1986) as the case in which the Federal Circuit held that veil piecing was not required for direct

infringement. (YETI's Resp. at 15; Dkt 27.) In *Orthokinetics*, the Federal Circuit reinstated a jury verdict finding corporate officers personally liable for direct infringement. 806 F.2d at 1578. In doing so, it explained that "[t]o determine whether corporate officers are personally liable for the direct infringement of the corporation under § 271(a) **requires invocation of those general principles relating to piercing the corporate veil.**" *Id.* at 1578 (emphasis added). Based on this statement, the Court cannot agree with YETI that the Federal Circuit's holding in *Orthokentics* was that veil piercing is **not** required for personal liability under § 271(a),[1] nor that later cases requiring veil piercing for personal liability under § 271(a) should be ignored.

Second, YETI points to cases from the Federal Circuit emphasizing the general principle that "an individual will still be liable for any torts that the individual personally participates in, even when on behalf of a corporation." (YETI's Resp. at 14; Dkt. 17.) While these cases identify an inconsistency between the general rule regarding personal liability for torts, *see, e.g.*, *United States v. Trek Leather, Inc.*, 767 F.3d 1288, 1299 (Fed. Cir. 2014) (en banc) (holding that "piercing of the corporate veil" was not required to hold a corporate officer liable for customs violations and stating that "[i]t is longstanding agency law that an agent who actually commits a tort is generally liable for the tort along with the principal, even though the agent was acting for the principal"), and the Federal Circuit's rule in patent cases that piercing the corporate veil is required for a corporate officer to be held liable for direct infringement, *Wordtech*, 609 F.3d at 1313 ("[T]he 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit

---

[1] While it is certainly unclear whether the Federal Circuit correctly applied the principles of corporate veil piercing in *Orthokinetics*, this Court cannot ignore the opinion's clear support for such an analysis. Further, while YETI argues that the statement in *Orthokinetics* endorsing veil piercing is dicta based on a later statement in the case emphasizing that corporate officers may be held personally liable for patent infringement, it is unclear whether this later statement (which also references inducing infringement) was specific to direct infringement under § 271(a) or whether it was intended to contradict the prior statement suggesting that veil piercing is required for personal liability.

in the name of the corporation, unless the corporation is the officers' 'alter ego.'"), they do not overcome the Federal Circuit's clear announcement of the rule in such cases.[2]

Because this Court concludes that corporate veil piercing is required for personal liability of a corporate officer under § 271(a), YETI must plausibly allege facts piercing the corporate veil with respect to the Jacobsens in order for its patent claim against the Jacobsens to survive. In Texas, "there are three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud." *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004).[3] The Complaint does not contain facts sufficient to allege that the corporate veil should be pierced with respect to the Jacobsens,[4] thus YETI's claim against the Jacobsens for patent infringement under § 271(a) must be dismissed.

### b. Induced Infringement

Section 271(b) imposes liability on "[w]hoever actively induces infringement of a patent." 35 U.S.C. § 271(b). Unlike direct infringement, induced infringement under § 271(b) does not require piercing the corporate veil. *Manville*, 917 F.2d at 553 ("Under [section 271(b)], corporate officers who actively assist with their corporation's infringement may be personally liable for inducing

---

[2] A panel of the Federal Circuit (in dicta in an unpublished opinion), suggested that the Federal Circuit's rule requiring veil piercing for personal liability for direct infringement should be interpreted narrowly to mean that "a corporate officer . . . cannot be found derivatively liable for *the corporation's infringement* without piercing the corporate veil." *Global Traffic Techs. LLC v. Morgan*, 620 F.App'x 895, 907 n.6 (Fed. Cir. 2015) (emphasis in original). In other words, corporate veil piercing should be required where it is the corporation's actions that constitute direct infringement, but not where the corporate officer's actions themselves constitute direct infringement. The Court thinks this reading is inconsistent with the most recent published opinion on the rule, which stated that "the 'corporate veil' shields a company's officers from personal liability for direct infringement *that the officers commit* in the name of the corporation, unless the corporation is the officers' 'alter ego.'" *Wordtech*, 609 F.3d at 1313 (emphasis added).

[3] In Texas, piercing the corporate veil is typically only discussed with respect to owners. In this case, the Jacobsens are alleged to be both owners and officers, but the Court has assumed their actions were primarily taken as officers or managers of the relevant corporations, rather than as owners. The Federal Circuit has, however, acknowledged this general rule and declined to reconsider its rule applying veil piercing analysis to corporate officers. *Wordtech*, 609 F.3d 1308, 1313 n.2.

[4] YETI does not argue that they have pled facts sufficient to pierce the corporate veil. (*See* YETI's Resp. at 13 & n.4; Dkt. 27).

infringement regardless of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil.").

In order to induce infringement under § 271(b), a defendant must have both "knowledge of the patent" and knowledge that "the [induced] acts were infringing." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, --- F.3d ---, 2016 WL 3124704, at *1 (Fed. Cir. June 3, 2016) (alteration in original) (quoting *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920, 1926 (2015)). "[W]illful blindness can satisfy the knowledge requirement for active inducement under § 271(b) . . . even in the absence of actual knowledge." *Id.*

The Jacobsens argue that YETI has failed to plead enough facts to show that the Jacobsens knew that their actions constituted infringement of YETI's patent, and, more specifically, that YETI did not adequately plead that the Jacobsens had knowledge of YETI's '397 patent. The Court disagrees.

In the Complaint, YETI alleges "Defendants," including the Jacobsens, "have been made aware of and had knowledge of the '397 patent, and the Defendants' infringement of the '397 patent has been, and continues to be, with full knowledge of the '397 patent." (Am. Compl. ¶ 61.) Further, they allege that "Defendants," including the Jacobsens, have "actively induc[ed] infringement by assisting, overseeing, directing, and personally participating in the design, marketing, advertising, and sales" of the allegedly infringing product. (Am. Compl. ¶ 59.) While these allegations are conclusory, they are supported by factual allegations that make it plausible that the Jacobsens either knew of or were willfully blind to the existence of the '397 patent, and knew that the acts they induced would constitute infringement.

Specifically, YETI alleges that defendants, including the Jacobsens, have infringed on YETI's drinkware product line, including the YETI Rambler™ Colster®, for which YETI obtained the '397 patent. (*Compare* Am. Compl. Illus. 2–5 *with* Am. Compl. Illus. 9–12; *see also* Am. Compl.

¶¶ 27, 55–57.) The Complaint includes images of the YETI Rambler™ Colster®, for which YETI obtained the '397 patent, and defendants' allegedly infringing product, the RTIC "Can," (*Compare* Am. Compl. Illus. 2 *with* Am. Compl. Illus. 9), which it alleges is a "confusingly similar imitation[]" of the YETI product. (Am. Compl. ¶ 27).

YETI also alleges that the Jacobsens are "the founders," "the founding managers and owners," and "the central figures in" each of the corporate defendants—RTIC Coolers, LLC, RTIC Drinkware, LLC, RTIC Web Services, LLC, and Corporate Support & Fulfillment, LLC—and "are actively involved in running and directing the business" of the corporate defendants. (Am. Compl. ¶ 6). YETI alleges that the infringing products, which include the RTIC "Can," were advertised and sold on the corporate defendants' principal website, RTICCoolers.com. (Am. Compl. ¶ 11.)

Further, YETI alleges that the Jacobsens "are responsible for overseeing the Defendants' infringing insulated drinkware products, including design, advertising, marketing, and sales," (Am. Compl. ¶ 29), "personally participated in the design of the Defendants' infringing products, including authorizing, directing, and approving the design of the Defendants' infringing products," (Am. Compl. ¶ 30), and "personally participating in the . . . marketing, advertising, and sales" of the allegedly infringing product. (Am. Compl. ¶ 59).

Taken together, YETI has alleged that the Jacobsens run several different entities that have essentially copied YETI's drinkwear line, and, more specifically, that the Jacobsens were personally involved in designing, marketing, and selling a product that looks "confusingly similar" to the product related to the '397 patent (a design patent). Drawing all reasonable inferences in favor of YETI, the Court finds YETI's allegations that the Jacobsens had knowledge of YETI's '397 patent and that they intended to induce the corporate defendants to infringe that patent plausible.

The Court finds three arguments made by YETI useful in support of this conclusion. First, YETI emphasizes the low threshold for proving concepts like knowledge and intent. *E.g., Merck &*

*Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1422 (Fed. Cir. 1989) ("Intent need not, and rarely can, be proven by direct evidence."); *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012) ("While the Complaint does not explicitly plead facts to show that [defendant] had a specific intent to induce infringement, it is not necessary to provide detailed factual support for each and every element of inducement."). The Court also notes that the intent required for induced infringement may be proven using circumstantial evidence. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012).

Second, YETI argues that the Jacobsens were aware of YETI's '397 patent at least by the time the amended complaint was filed, on May 16, 2016, because it included a claim against the Jacobsens and the other defendants for infringement of the '397 patent. (Am. Compl. ¶¶ 58–64.) The Court agrees, and finds that the Jacobsens had actual notice of the existence of the '397 patent by at least May 16, 2016. *See, e.g., SRI Intern, Inc. v. Advanced Tech. Labs, Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). YETI alleges that the Jacobsens have engaged in numerous inducement activities that could have continued after the initial design and marketing of the product, such as being the principal decisionmakers regarding the promotion, advertising, and sale of the infringing product. (Am. Compl. ¶ 52.) Accepting these allegations as true, the Court finds it plausible that, at the least, the Jacobsens had knowledge of the '397 patent on May 16, 2016 and knowingly induced infringement by the corporate defendants afterward.

Further, the Court notes that there is another suit pending before this Court involving YETI and the Jacobsens, involving coolers rather than drinkware. That suit—also involving claims of patent infringement—was filed nearly a year before YETI filed its amended complaint and patent claim in this case, YETI Coolers, LLC v. RTIC Coolers, LLC, et al., No. 1:15-cv-597-RP (W.D. Tex. July, 17, 2015), and makes it plausible that the Jacobsens had knowledge or were willfully blind to the existence of YETI's '397 patent prior to the filing of the amended complaint in this case.

9

Finally, YETI identifies several opinions from our sister courts that have denied motions to dismiss claims of induced infringement where the factual allegations were similar to those at issue here. For example, in *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.Supp.3d 816, 825 (N.D. Cal. 2015), the plaintiff alleged that a corporate officer "exercised broad and complete control over [the corporate] defendants' business and operations," and defendant moved to dismiss because the plaintiff "ha[d] failed to plead 'knowledge that the induced acts constitute patent infringement.'" *Id.* at 825. The district court disagreed, noting that the complaint alleged that the corporate officer knew that the product made by the corporate defendant was a copy of the patented product, that the corporate officer had directed the corporate defendant to make and sell those products, and knew that the product was patented because the corporate officer had signed a sales-agency agreement expressly reserving the Plaintiffs intellectual property rights in its product. *Id.* at 825. The court explained that "[f]rom these facts, one could plausibly infer that [the corporate officer] knew of, or was willfully blind to, the existence of the . . . patent, and specifically intended for [the corporate defendants'] systems to infringe the patents that covered [the plaintiffs'] systems." *Id.*

Similarly here, YETI has alleged that the Jacobsens had full knowledge of the '397 patent, and directed the design, marketing, and sale of the infringing product. While the Jacobsens did not sign any sort of agreement with YETI that would have put them on notice of YETI's intellectual property rights like in *Ultratech*, the filing of the patent infringement claims in this suit and an earlier suit make it plausible that the Jacobsens knew of or were willfully blind to the existence of the '397 patent. And, like in *Ultratech*, it is plausible to infer from the alleged facts that the Jacobsens knew of, or were willfully blind to, the existence of the '397 patent, and specifically intended to infringe on it.

Thus, the Court denies the Jacobsens' motion to dismiss with respect to YETI's claim for infringement under § 271(b).

## IV. CONCLUSION

Based on the forgoing, Defendants John and Jacob Jacobsen's Motion to Dismiss is

**GRANTED** in part, with respect to YETI's claim for direct infringement under § 271(a), and

**DENIED** in part, with respect to Plaintiff YETI's claim for induced infringement under § 271(b).

**SIGNED** on July 19, 2016.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE