### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| YETI COOLERS, LLC, | |
| **Plaintiff,** | |
| v. | **CIVIL NO. 1:16-cv-00264-RP** |
| RTIC Coolers, LLC, RTIC Drinkware, LLC, RTIC Web Services, LLC, Corporate Support & Fulfillment, LLC, John Jacobsen, and James Jacobsen | **REDACTED PENDING MOTION TO SEAL** |
| **Defendants.** | |

## YETI'S MOTION FOR A PRELIMINARY INJUNCTION AND EXPEDITED HEARING

Plaintiff, YETI Coolers, LLC ("YETI"), seeks the emergency relief of an ***immediate*** preliminary injunction against Defendants (collectively "RTIC"), to prevent further irreparable harm to YETI from RTIC's newest violations of YETI's intellectual property: ongoing sales of RTIC products displaying YETI's trademark "YETI."

i

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.    BACKGROUND AND STATEMENT OF FACTS ........................................... 2

   A. The YETI Trademark .................................................................................... 2

   B.    RTIC's Copycat Strategy .......................................................................... 4

   C.    RTIC's Recent Sales of Counterfeit Products with YETI's Trademark ......... 5

   D.    RTIC's Prior Knowledge and Ongoing Efforts to Hide its Counterfeiting..................... 9

III.    ARGUMENT ................................................................................................... 10

   A.    Standards For Issuance Of A Preliminary Injunction ................................... 10

   B.    YETI is Highly Likely to Succeed on the Merits of its Trademark Claims .................. 11

      1.    The YETI Trademark is Protectable .......................................................... 13

     2. RTIC's Products Labelled with YETI's Trademark Have Already Caused Confusion and Will Continue to Cause a Likelihood of Confusion........................................... 15

   C. YETI Has No Adequate Remedy at Law and is Irreparably Injured by RTIC's Conduct... 17

   D.    Any Threatened Injury to RTIC Does Not Weigh Against an Injunction ..................... 18

   E.    An Immediate Injunction Benefits the Public Interest .................................... 18

IV.    CONCLUSION................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.,*
    550 F.3d 465 (5th Cir. 2008) ......................................................... 3, 14, 15

*Bulbs 4 East Side, Inc. v. Ricks,*
    No. 14-3672, 2016 WL 4208564 (S.D. Tex. Aug. 10, 2016) ............................................ 14, 15

*Chemlawn Services Corp. v. GNC Pumps, Inc.,*
    690 F.Supp. 1560 (S.D. Tex. 1988) ................................................... 14, 16

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,*
    659 F.2d 695 (5th Cir. 1981) ......................................................... 16, 18

*Lennar Pacific Properties Management, Inc. v. Dauben, Inc.,*
    No. 07-1411, 2007 WL 2340487 (N.D. Tex. Aug. 16, 2007) .......................... passim

*Park 'n' Fly, Inc. v. Dollar Park and Fly, Inc.,*
    469 U.S. 189 (1985) .............................................................................. 4

*Petro Franchise Systems, LLC v. All American Properties, Inc.,*
    607 F.Supp.2d 781 (W.D. Tex. 2009) ................................................... passim

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.,*
    576 F.3d 221 (5th Cir. 2009) ......................................................... 13, 15

*Zyvex Corp. v. Starkewolfe,*
    No. 02-190, 2002 WL 1359719 (N.D. Tex. June 18, 2002) ............... 12, 13, 17, 19

**Statutes**

15 U.S.C. § 1057 ................................................................................. 13
15 U.S.C. § 1065 ............................................................................. 4, 13
15 U.S.C. § 1114 ........................................................................... 11, 12
15 U.S.C. § 1115 ............................................................................. 4, 13
15 U.S.C. § 1125 ........................................................................... 11, 12

**Treatises**

MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 15:37 .................................. 15

## I.   INTRODUCTION

YETI seeks emergency relief of an immediate preliminary injunction against RTIC to prevent further irreparable harm to YETI from RTIC's newest violations of YETI's intellectual property. In recent days, multiple consumers have contacted YETI to report that they ordered products from RTIC and the ***products RTIC sent to them prominently display YETI's trademark "YETI."*** Compounding this problem is that ***these counterfeit "YETI" products also include RTIC trademarks*** on the same product. These phony products have already caused confusion in the marketplace regarding the source of the products and the relationship between YETI and RTIC. This motion is necessary to prevent YETI's loss of control over its YETI trademark, the destruction of the public's goodwill in the YETI trademark, and the additional, and certain, public confusion RTIC's conduct continues to cause.

Immediate intervention by the Court is especially required here because RTIC has refused to entertain YETI's proposals to resolve these issues by agreement.[1] Instead, RTIC has been working behind the scenes to improperly contact consumers that received these counterfeits in an apparent attempt to hide the scope of its latest flagrant infringements.

All the factors for a preliminary injunction weigh heavily in favor of YETI here. YETI owns protectable trademark rights in the inherently distinctive YETI mark (the "YETI Trademark"), and there is a likelihood of success at least because RTIC is using the ***exact*** same trademark on the same types of goods as YETI, in a manner that has already caused actual confusion. Relatedly, because RTIC's use of the YETI Trademark has already caused confusion

---

[1] YETI tried to resolve this issue by agreement multiple times. Specifically, counsel for YETI reached out to counsel for RTIC at least five times, and the Parties' counsel spoke several times over the phone. Examples of relevant correspondence are attached as Exhibits G-I to the Declaration of Eric J. Hamp. RTIC refused to agree to YETI's proposed Order.

and will continue to result in confusion of the public, there will be significant, irreparable damage to YETI without an immediate injunction.

In contrast, there will be no cognizable harm to RTIC by the immediate entry of an injunction: there is simply no reason for RTIC to mark its products with the YETI Trademark. And any "harm" that would result from an injunction is self-inflicted, meaning it does not weigh against an injunction. Finally, the public interest is served by protecting trademarks and eliminating consumer confusion, and therefore also favors immediate injunctive relief.

Accordingly, as set forth below the Court should grant YETI's request for an immediate injunction that: (1) prohibits RTIC from shipping any RTIC products that contain the YETI Trademark, (2) orders RTIC to personally inspect all RTIC products before they are shipped to consumers to assure the products do not contain the YETI Trademark, (3) orders RTIC to provide notice regarding the counterfeit products, and (4) orders RTIC to provide information regarding the circumstances of these products and infringements. Should the Court desire a hearing on these issues, YETI requests an expedited hearing given the ongoing and irreparable harm to YETI.

## II.    BACKGROUND AND STATEMENT OF FACTS

### A. The YETI Trademark

YETI was formed by two Austin brothers in 2006. (Ex. 1, Declaration of Corey Maynard ("Maynard Decl.") at ¶ 2). Since its inception, YETI has continually promoted and sold its products under the "YETI" name, (*Id.* at ¶ 3), and therefore owns substantial trademark rights to the YETI Trademark. YETI has extensively and continuously promoted and used the YETI Trademark in connection with drinkware, among other products, for years in the United States, (*Id.* at ¶ 3-5), including the YETI Rambler™ 30 oz. Tumbler, YETI Rambler™ 20 oz. Tumbler, YETI Rambler™ Lowball and the YETI Rambler™ Colster® beverage holder illustrated below:



**YETI Rambler™ 30 oz. Tumbler, YETI Rambler™ 20 oz. Tumbler, YETI Rambler™ Lowball, and YETI Rambler Colster® beverage holder**

YETI drinkware products bearing the YETI Trademark are in extremely high demand,   REDACTED

REDACTED                                             (*Id.* at ¶ 6). YETI

drinkware products bearing the YETI Trademark are currently sold in over 7,600 retail stores

nationwide, and are also promoted and sold on over 100 retailer websites, many of which are the

websites of national chain stores. (*Id.*). YETI has sold and currently sells drinkware products

bearing the YETI Trademark in all 50 states and the District of Colombia.  (*Id.* at ¶ 13).

REDACTED

 REDACTED         YETI has promoted drinkware products bearing the YETI Trademark on its

website, via online videos, through advertisements, and at trade shows. (*Id.* at ¶¶ 9-12, Exs. B-E).

YETI has also received unsolicited media attention for its drinkware products. (*Id.* at ¶ 8, Ex. A).

Through at least these activities and substantial use, consumers have come to associate

the YETI Trademark as one of the source identifiers of YETI, and as one of the symbols of the

quality of products offered by YETI. *See, e.g., Bd. of Supervisors for La. State Univ. Agric. and

Mech. Coll. v. Smack Apparel Co.,* 550 F.3d 465, 476 (5th Cir. 2008) (sales, advertising, and

other use/publicity support secondary meaning).

As examples of its rights in the YETI Trademark, YETI owns several federal trademark registrations that include the mark YETI, including U.S. Trademark Registration Nos. 3,203,869 and 4,948,371 for YETI, U.S. Trademark Registration No. 4,833,419 for YETI COLSTER, and U.S. Trademark Registration No. 4,871,725 for YETI RAMBLER COLSTER. (Ex. 2, Declaration of Eric J. Hamp ("Hamp Decl.") at ¶¶ 3-6, Exs. A-D). These federal registrations are entitled to presumptions of validity and YETI's ownership thereof. 15 U.S.C. § 1057. Registration No. 3,203,869, is now incontestable. (*Id.* at ¶ 7, Ex. E at 49). This **conclusively** establishes the validity of this YETI mark, as well as YETI's ownership thereof. *See* 15 U.S.C. §§ 1065, 1115; *Park 'n' Fly, Inc. v. Dollar Park and Fly, Inc*., 469 U.S. 189, 194-96 (1985). YETI also owns substantial common law rights in and to the YETI Trademark based on its extensive and continuous promotion and use of the YETI Trademark, as described above.

### B.   RTIC's Copycat Strategy

YETI's success has attracted many copycats in the marketplace for all of its products. RTIC is one of the most brazen copycats of YETI's products, and RTIC's continually expanding scope of infringement and dilution has forced YETI to file four lawsuits in this Court in attempt to stop RTIC's flagrant copying, including a lawsuit based in part on the intentional use of the YETI Trademark and another YETI word trademark. (Case No. 1:15-00597 (W.D. Tex.) (including claims for infringement of the YETI Trademark and YETI's "ROADIE" trademark); Case No. 1:16-00264 (W.D. Tex.); Case No. 1:16-00909 (W.D. Tex.); Case No. 1:16-00985 (W.D. Tex.)).

The products at issue in this case are drinkware. RTIC advertises, promotes, sells, and distributes drinkware products that violate YETI's patent and trade dress rights, including products that are knockoffs of the YETI Rambler™ Colster® beverage holder (RTIC calls its knockoff the RTIC "Can," and RTIC sometimes also refers to this product as a "Koozie"), the

4

YETI Rambler™ Lowball (RTIC calls its knockoff the "Lowball"), and the YETI 30 oz. Rambler™ Tumbler. (ECF 15 at, *e.g.* ¶¶ 27-54, 65-90):



| Example Images of RTIC 30 oz. Tumbler Infringing Product (left), RTIC 20 oz. Tumbler Infringing Product, RTIC "Lowball" Infringing Product, and RTIC "Can" Infringing Product (right) |
|---|

### C.   RTIC's Recent Sales of Counterfeit Products with YETI's Trademark

YETI is seeking this injunction because it recently learned that RTIC has now started selling products that bear the YETI Trademark, and therefore appear to be outright counterfeits. The problem here is exacerbated because RTIC is also including RTIC branding on the very same products. ***Specifically, several customers recently notified YETI that they have ordered drinkware products from RTIC's website, rticcoolers.com, and RTIC sent those customers products that are branded with the "YETI" Trademark and with RTIC's mark on the same product.*** YETI has therefore moved for leave to amend its Complaint to add claims based on these new violations of YETI's trademark rights and to seek immediate injunctive relief.

For example, on January 13, 2017, Brent Moore, CEO of Outlaws Custom Coatings contacted YETI regarding an order of RTIC Lowball products with a camouflage exterior finish ordered from Defendants' website, rticcoolers.com. (Ex. 3, Declaration of Chad Nelson ("Nelson Decl."), at ¶¶ 12-14, Ex. C; Hamp Decl. at ¶¶ 11-13, Exs. J-L). ***RTIC shipped Mr. Moore a Lowball product that was embossed with "YETI" on the side and "RTIC" on the bottom and***

*lid.* (*Id.*). Mr. Moore created a brief video of himself holding the product and describing it, and he emailed that to YETI for an explanation. (Nelson Decl. at ¶¶ 12-14, Ex. D). The video is attached as Exhibit D to the Nelson Decl., and below are screenshots from the video that show the Lowball tumbler with both the YETI Trademark (in green circle) and RTIC marks (in red circle).



**Lowball Tumbler That RTIC Sold to Mr. Moore That Has YETI Trademark and RTIC Marks (screenshots of video provided by Brent Moore to YETI with annotations added) (*see Nelson Decl. at Ex. D*)**

As a result of RTIC's phony product, Mr. Moore was confused about whether this product came from YETI and about the relationship between RTIC and YETI. (Nelson Decl. at Ex. D). Mr. Moore's actual confusion could not be expressed more clearly than in the contemporaneous video he created about the fake YETI product that RTIC sent him, in which he said: "***We just opened this up out of an RTIC box. It is a 10 ounce Lowball, and it's got YETI on it.*** All the paperwork and all that is still in there. ***And if you turn it on the bottom, there it is, it says RTIC. So, are they the same company or what?***" (*Id.*) (emphasis added). This statement illustrates the actual confusion in the marketplace that has been created and will continue to be created in the marketplace from RTIC's counterfeits.

As another example of RTIC's counterfeiting, on January 9, 2017 Brandon Coonce contacted YETI regarding a similar situation. (Nelson Decl. at ¶¶ 9-11, Ex. B). Mr. Coonce had ordered from RTIC a "Can" beverage holder product with a camouflage exterior finish. (*Id.*). Mr. Coonce's pictures show that ***the product RTIC sent him was in RTIC packaging, and had RTIC embossed on the bottom but had the YETI Trademark embossed on the side***. (*Id.*). This product is shown in the following pictures that Mr. Coonce provided to YETI, with annotations added to show the YETI Mark (in green circle) and RTIC marks (in red circles):



**"Can" Product that RTIC Sold to Mr. Coonce That Has YETI Trademark and RTIC Marks (photographs provided by Mr. Coonce to YETI with annotations added) (*see* Nelson Decl. at Ex. B)**

Likewise, on December 28, 2016, Allison Proctor Thomas contacted YETI regarding a RTIC "Can" product that she ordered from RTIC, with a camouflage exterior finish. (Nelson Decl. at ¶¶ 4-8, Ex. A). Ms. Thomas reported that ***RTIC sent her an RTIC box with a product that included an RTIC label and that the product also had the YETI Trademark embossed on the side of the product.*** (*Id.*). This product is shown in the following pictures that Ms. Thomas provided to YETI, with annotations added to show the YETI Mark (in green circle) and RTIC marks (in red circles):

 

**"Can" Product that RTIC Sold to Ms. Thomas That Has YETI Trademark and RTIC Marks (photographs provided by Ms. Thomas to YETI with annotations added) (Nelson Decl. at Ex. A).**

The harm to YETI and its YETI Trademark from these activities is self-evident. YETI's brand, reputation and goodwill are injured by this wrongful association with RTIC. RTIC's activities harm the ability of YETI's mark to serve as a source identifier: the fundamental purpose of a trademark. Customers incorrectly believe that YETI is supplying products to RTIC or vice versa, or that the companies are related or affiliated. The situation is even further

aggravated because RTIC's products are cheaper than, and dramatically inferior to, YETI's Rambler™ Drinkware.

**REDACTED**

And at a minimum, it is unquestionable that RTIC's quality control and inspection of products before sale falls far below YETI's standards as evidenced at least by the products containing both YETI and RTIC marks, shown above.

### D.   RTIC's Prior Knowledge and Ongoing Efforts to Hide its Counterfeiting

Notably, RTIC's "upper management" was already aware of this situation even though RTIC said nothing to YETI about it until YETI's counsel contacted RTIC. Ms. Thomas forwarded to YETI a revealing communication that she had with RTIC in which RTIC apologized and said that RTIC's "upper management" was being told about the bogus product sent to Ms. Thomas. (Nelson Decl. at ¶ 8, Ex. A). Thus, even though RTIC was apparently hoping to hide this situation from YETI, RTIC was already on notice of the grounds of this motion even before YETI initiated discussions with RTIC earlier this week.

Since then, RTIC has evaded genuine discussion of these issues. After YETI reached out to RTIC on five occasions on January 18 and 19 and proposed entering a joint Order, RTIC has effectively ignored YETI's proposed Order and stated that "RTIC is not offering for sale or selling products bearing YETI's purported trademark 'YETI.'" (*Id.* at Ex. H). The evidence unquestionably indicates otherwise. (*See* Nelson Dec. at ¶¶ 4-14, Exs. A-D).

But even as it denied responsibility, RTIC apparently began contacting customers who received these products to demand that the counterfeit products be returned and swept under the rug. As explained above, YETI's counsel had been discussing the bogus products with Brent Moore, and Mr. Moore had indicated that he planned to sign a declaration regarding the Lowball product he received from RTIC. (Hamp Decl. at Ex. G). On January 19, however, Mr. Moore informed counsel for YETI that he was now concerned about signing the declaration because that day he had received correspondence from RTIC stating that, if he did not send back to RTIC the RTIC product bearing the YETI trademark, RTIC may not sell him products in the future. (*Id.*).

## III.   ARGUMENT

### A.   Standards For Issuance Of A Preliminary Injunction

To obtain preliminary injunctive relief, a plaintiff must show the following: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) granting the injunction will not disserve the public interest. *Lennar Pacific Properties Management, Inc. v. Dauben, Inc.*, No. 07-1411, 2007 WL 2340487, at *2 (N.D. Tex. Aug. 16, 2007) (granting temporary restraining order); *Petro Franchise Systems, LLC v. All American Properties, Inc.*, 607 F.Supp.2d 781, 787 (W.D. Tex. 2009) (granting preliminary injunction).

Every consideration weighs heavily in YETI's favor. When confronted by infringing conduct like RTIC's, courts have found that immediate injunctive relief is necessary to preserve the *status quo* and prevent irreparable harm until the rights of the parties may be ascertained on the merits. *See, e.g., Lennar*, 2007 WL 2340487, at *2-3; *Petro*, 607 F.Supp.2d at 787 (W.D. Tex. 2009) (granting preliminary injunction to preserve status quo and prevent irreparable harm from use of identical trademark).

### B.   YETI is Highly Likely to Succeed on the Merits of its Trademark Claims

YETI is highly likely to succeed on its claims. To ultimately prevail on a trademark infringement claim, YETI "must first establish ownership in a legally protect[a]ble mark." *Petro*, 607 F.Supp.2d at 788 (citing *Bd. of Supervisors*, 550 F.3d at 474); *see also* 15 U.S.C. § 1114. Once trademark ownership is established, "[t]he Lanham Act provides a cause of action for infringement where one (1) uses any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Petro*, 607 F.Supp.2d at 788. The test for false designation of origin under 15 U.S.C. § 1125(a)[2] similarly states that:

> [a]ny person who, on or in connection with any goods or services … uses in commerce any word, term, [or] name … or any false designation of origin… which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person … shall be liable in a civil action by any person who believes that the or she is or is likely to be damaged by such act.

The facts here are straightforward and are a model case for granting an injunction. Because RTIC is selling the relevant goods to customers without YETI's consent, the only two

---

[2] YETI's arguments regarding the YETI Trademark are equally applicable to the other claims of the Second Amended Complaint, such as dilution, common law infringement, unjust enrichment, and so on.

factors that can be even somewhat in dispute are: ownership of a protectable mark and the likelihood of confusion.[3] And here, RTIC is using the **identical mark**, on the **identical** products as YETI, while marketing and selling to the same types of consumers, and some consumers have already been confused by RTIC's actions. Thus, as to the overall likelihood of success, YETI easily establishes a prima facie case and therefore shows a likelihood that is "more than negligible," *Lennar*, 2007 WL 2340487 at *2, and, at a minimum raises "questions going to the merits so serious, substantial, and doubtful as to make them fair ground for litigation and thus for more deliberate investigation." *Zyvex Corp. v. Starkewolfe*, No. 02-190, 2002 WL 1359719, at *2 (N.D. Tex. June 18, 2002) (granting preliminary injunction).

This is sufficient to warrant immediate injunctive relief, *id.*, and in fact, YETI's degree of persuasion on the likelihood of success factor is lowered here because YETI has such a strong position regarding the final three factors (irreparable injury, harm to infringer and public interest) as discussed below. *Lennar*, 2007 WL 2340487, at *2 ("some" likelihood is sufficient for injunction when other factors are strong) (citing *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Company*, 621 F.2d 683, 686 (5th Cir. 1980)). All three final factors strongly weigh in favor of an injunction because the very foundations of trademark law are to prevent consumer confusion and protect a mark holder's goodwill and control over its marks. This further underscores that YETI has shown a sufficient likelihood of success.

Indeed, when the defendants are using "identical" marks in an unauthorized manner, such as here, the plaintiff is "likely to succeed in establishing a likelihood of confusion or mistake."

---

[3] RTIC cannot dispute the remaining elements of, for example, a § 1114 infringement claim: that the "YETI" branding is a "reproduction, counterfeit, copy, or colorable imitation of a [YETI] mark" done without YETI's consent, or that its counterfeit products are being bought by consumers and are "in commerce" due to RTIC's "sale, offering for sale, distribution, or advertising of" goods. 15 U.S.C. § 1114. *See also* 15 U.S.C. § 1125.

*Petro*, 607 F.Supp.2d at 788. While the Fifth Circuit typically uses a "digits of confusion" test to determine whether confusion is likely, "a district court may confine its digits-of-confusion analysis to the determination that the marks used by the allegedly infringing party are the exact marks owned by the plaintiff and, if they are, find that confusion is likely." *Id.* Thus, the Court may find YETI has shown a likelihood of confusion, and therefore success, at the outset. *See, e.g., Zyvex*, 2002 WL 1359719, at *3 (a plaintiff establishes a likelihood of success sufficient for an injunction when it owns a registered trademark and defendant is using that same mark). But even if the Court finds a more detailed review warranted, there is a likelihood of success here: the YETI trademark is protectable and RTIC's counterfeiting use is likely to cause confusion.

### 1.    The YETI Trademark is Protectable

The YETI Trademark is protectable for numerous reasons. As an initial matter, the term "YETI" is inherently distinctive and therefore protectable even without a showing of consumer associations. *See, e.g., Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (suggestive, arbitrary, and fanciful trademarks are inherently distinctive and do not require secondary meaning to be protectable marks, unlike descriptive or generic terms). Indeed, the U.S. Trademark Office granted YETI's initial Registration No. 3,203,869, and did not issue an Office Action indicating the word mark was generic or descriptive. (*See generally* Hamp Decl. at Ex. E). In addition to YETI's Registration No. 3,203,869, YETI owns Trademark Registration No. 4,948,371 for YETI, U.S. Trademark Registration No. 4,833,419 for YETI COLSTER, and U.S. Trademark Registration No. 4,871,725 for YETI RAMBLER COLSTER. (Hamp Decl. at ¶¶ 3-6, Exs. A-D). By statute, all of these federal registrations are entitled to presumptions of validity and ownership, 15 U.S.C. § 1057, and YETI's Registration No. 3,203,869 is incontestable and therefore provides conclusive evidence of the same. 15 U.S.C. §§ 1065, 1115;

(Hamp Decl. at Ex. E at 49). Thus, these registrations show an alternative basis for finding the YETI Trademark is protectable without an analysis of secondary meaning.

Even if YETI had to show secondary meaning, as it would for a descriptive mark, there is sufficient evidence to show a likelihood of success as to protectability.            **REDACTED**

**REDACTED**

**REDACTED**                        , and the YETI Trademark has received substantial public attention. (Maynard Decl. at ¶¶ 4-13, Exs. A-E). *Bd. of Supervisors*, 550 F.3d at 476 (volume of sales, advertising, and other use/publicity support secondary meaning). As a result of its use and advertising of the YETI Trademark with drinkware, and the substantial sales of drinkware goods under the YETI Trademark, the trademark "YETI" enjoys strong recognition and good will among the general consuming public and the public within Texas for drinkware, and, at a minimum, shows a likelihood of the same.

RTIC's intentional use of the YETI Trademark also supports a finding of secondary meaning. *Bd. of Supervisors,* 550 F.3d at 474-78; *Bulbs 4 East Side, Inc. v. Ricks*, --- F.Supp.3d ---, No. 14-3672, 2016 WL 4208564, at *5 (S.D. Tex. Aug. 10, 2016) ("Courts have recognized that evidence of ***intentional copying shows the strong secondary meaning of a product*** because there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence.") (emphasis added and citation omitted); *Chemlawn Services Corp. v. GNC Pumps, Inc*., 690 F.Supp. 1560, 1571 (S.D. Tex. 1988) ("In addition, case law holds that proof of deliberate copying of one product by another establishes a *prima facie* case of secondary meaning sufficient to shift the burden of persuasion to the defendant on that issue") (granting preliminary injunction). Finally, the actual confusion already present in the marketplace also shows there is secondary meaning in the YETI Trademark. *See, e.g.,* MCCARTHY ON

TRADEMARKS & UNFAIR COMPETITION § 15:37 (evidence of actual confusion is "strong evidence" of secondary meaning).

### 2. RTIC's Products Labelled with YETI's Trademark Have Already Caused Confusion and Will Continue to Cause a Likelihood of Confusion

RTIC is using the exact YETI Trademark, on the same kinds of goods that are marketed and sold to the same types of consumers as YETI's. The Fifth Circuit has adopted a non-exhaustive list of considerations for determining likelihood of confusion between two marks: (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets or purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care employed by consumers. *See, e.g., Petro*, 607 F.Supp.2d at 788, n. 5. These factors collectively, and clearly, favor a likelihood of confusion.

While actual confusion is not required to establish a likelihood of confusion, it can be strong evidence in support of finding of likelihood of confusion. *See, e.g., Bulbs 4 East Side*, 2016 WL 4208564, at *8; *Bd. of Supervisors,* 550 F.3d at 484. Here, Mr. Moore's statements evidence text book confusion. He was confused about the source of the products as well as whether there is any affiliation between RTIC and YETI ("are they the same company or what?"). (Nelson Decl. at ¶ 14, Ex. D). His statement alone shows there is a likelihood of confusion here. *Cf. Xtreme Lashes, LLC*, 576 F.3d at 229-30 (explaining that "[w]hile very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof" and that "courts may not ignore competent evidence of actual confusion").

Moreover, RTIC's use of the exact same trademark, embossed into its metal products, could only be the result of deliberate, intentional actions. Thus, the apparent intent to use the YETI Trademark also weighs in favor of a likelihood of confusion:

> [I]ntent of defendants in adopting their mark is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity … As soon as we see that a second comer in a market has, for no reason that he can assign, plagiarized the 'make-up' of an earlier comer, we need no more; for he at any rate thinks that any differentia he adds will not, or at least may not, prevent the diversion and we are content to accept his forecast that he is 'likely' to succeed … we can think of no other plausible explanation for such behavior. It is so easy for a business man who wishes to sell his goods upon their merits to select marks and packagings that cannot possibly be confused with his competitor's that courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them.

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703-04 (5th Cir. 1981). *See also Chemlawn Services*, 690 F.Supp. at 1571 ("Courts almost unanimously presume a likelihood of confusion based upon a showing that the defendant intentionally copied the plaintiff's trademark or trade dress") (granting preliminary injunction).

Turning to the type of mark infringed, as explained above, the YETI trademark is inherently distinctive and there are multiple registrations to the YETI Trademark that are presumed valid. As to the similarity of the marks, there can be no dispute that the "YETI" mark that RTIC is using is identical to YETI's Trademark. Regarding the similarity of the products or services, as shown in Section II above, RTIC's infringing products are designed to look like YETI's and for the exact same uses as YETI's. As to the other factors, these also weigh in favor of confusion: YETI and RTIC use similar advertising channels, such as the Internet; YETI and RTIC target the same groups of purchasers (by virtue of selling the same types of goods, insulated products, in at least some of the same markets, such as Texas) (Maynard Decl. at ¶¶ 8-

13, Exs. A-E; ECF 15 at ¶¶ 13-54, Exs. 4-6, 9, 12-15), and the degree of care employed by consumers does not prevent confusion from these counterfeit products. (Nelson Decl. at Ex. D). Thus, the confusion factors show there is, at a minimum, a likelihood of success on the likelihood of confusion issue, and therefore YETI's trademark claims on the whole.

### C. YETI Has No Adequate Remedy at Law and is Irreparably Injured by RTIC's Conduct

RTIC's infringement of the YETI Trademark causes irreparable injury to YETI. "Trademark infringement is, as a matter of law, an irreparable injury," that cannot be remedied by economic damages, meaning that a demonstration of infringement "satisfie[s] this prong" in support of an injunction. *Lennar*, 2007 WL 2340487 at *2. Therefore, because YETI has shown a sufficient likelihood of success, it necessarily has demonstrated this factor also weighs in favor of an injunction. *See, e.g., id.*; *Zyvex Corp.*, 2002 WL 1359719, at *3 ("[B]ecause the court has already concluded that Zyvex is likely to prove at trial that Starkewolfe is infringing on its trademark, the court finds that Zyvex has *a fortiori* alleged irreparable injury."); *Petro*, 607 F.Supp.2d at 794 (irreparable harm exists upon a finding of likelihood of confusion).

In addition, RTIC's continued identical use of YETI Trademark demonstrates irreparable harm. *Zyvex Corp.*, 2002 WL 1359719, at *3 (a substantial threat of irreparable injury present when, without injunctive relief, the defendant could continue to use "indistinguishable" marks from the plaintiff's trademark); *Petro*, 607 F.Supp.2d at 794 (injunction warranted regardless of whether irreparable harm is presumed, because "there is a likelihood of harm … because of the *possible injury* to the company's goodwill … or should the marketplace believe that plaintiff is sponsoring" the defendant in connection with inferior products) (quotations omitted). This is true even if RTIC's counterfeits were superior in quality to YETI's, which they are not. *Id.* at 795 (even if infringer's services were superior, "the result is a collision between goodwills and the

rightful owner suffers a risk of injury to reputation" and therefore harm to the owner) (quotations omitted).

### D.     Any Threatened Injury to RTIC Does Not Weigh Against an Injunction

There is no cognizable harm to RTIC here that weighs against an injunction. Any benefits an infringer may receive from the improper use of a trademark do not outweigh the irreparable harm to the owner from infringement. *Lennar*, 2007 WL 2340487 at *3. And RTIC can choose source identifiers that do not infringe the YETI Trademark or any other YETI rights. *Chevron Chem.*, 659 F.2d at 703-04 ("It is so easy for a business man who wishes to sell his goods upon their merits to select marks and packagings that cannot possibly be confused with his competitor's …").

In any event, in these circumstances, RTIC cannot complain about any effects of an injunction because this harm is self-inflicted. *Petro*, 607 F.Supp.2d at 797 (granting injunction when infringing party "brought the difficulties occasioned by the issuance of an injunction upon themselves"). Relatedly, a bond is not necessary if an injunction is granted. Nonetheless, if the Court believes a bond is appropriate, YETI is willing to provide an appropriate bond to help secure an injunction and prevent additional harm to YETI, although YETI requests that the bond amount be low for the reasons described above. *Id.* at 801 ("[B]ecause Plaintiffs' likelihood of success on the merits is strong, this Court elects to resolve uncertainties as to the proper basis for [bond] calculation in their favor.").

### E.   An Immediate Injunction Benefits the Public Interest

The public interest also weighs in favor of grating an injunction. Trademarks allow consumers to consistently and reliably identify products in commerce, meaning "the public interest is served by terminating the improper use of trademarks and making such misconduct unprofitable so that the public will not be deceived or confused as to the source or sponsorship of

the goods and services they consume." *Lennar*, 2007 WL 2340487 at *3. *See also Zyvex Corp.*, 2002 WL 1359719, at *4 (the public interest is served by protecting trademarks). This is particularly appropriate here where YETI has demonstrated a likelihood of success, for the reasons explained above. *Petro*, 607 F.Supp.2d at 797. This is why early injunctive relief is "routinely granted to prevent ongoing use of a trademark." *Id.* at 798.

RTIC's conduct runs squarely counter to the public's interest. It can make no plausible argument why the public interest would benefit from allowing RTIC to use the YETI Trademark on RTIC's products. Thus, the public interest also weighs in favor of granting YETI's motion for immediate injunctive relief.

## IV.    CONCLUSION

Each of the factors required to grant a preliminary injunction weighs heavily – if not exclusively – in YETI's favor. The Court should prevent further irreparable harm and maintain the *status quo*, by issuing a preliminary injunction against RTIC.

Dated: January 20, 2017        Respectfully submitted,

By: /s/J. Pieter van Es

Kevin Meek
Texas Bar No. 13899600
kevin.meek@bakerbotts.com
Baker Botts L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 322-2639
Facsimile: (512) 322-8385

Joseph J. Berghammer (admitted in the Western District of Texas)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
J. Pieter van Es (admitted in the Western District of Texas)

Illinois Bar No. 6210313
pvanes@bannerwitcoff.com
Michael L. Krashin (*pro hac vice*)
Illinois Bar No. 6286637
mkrashin@bannerwitcoff.com
Sean J. Jungels (admitted in the Western District
of Texas)
Illinois Bar No. 6303636
sjungels@bannerwitcoff.com
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2017, I caused the foregoing document to be electronically filed with the Clerk of the court pursuant to the Electronic Filing Procedures and using the CM/ECF system, and that a true and correct electronic copy was thereby caused to be served on Defendants by and through their counsel of record.

/s/J. Pieter van Es

**Local Rule CV-7(i) Statement**

Counsel for YETI, Joseph Berghammer and Katherine Fink, conferred in good faith with counsel for the Defendants via email and phone, on January 18, 2017, January 19, 2017 and January 20, 2017, to resolve whether the Defendants would agree to jointly submitting a proposed Court Order requesting the relief contained in the Proposed Order provided with this motion. Counsel for YETI certifies that the Defendants have not agreed to a joint submission.

/s/J. Pieter van Es