**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**YETI COOLERS, LLC,**
          Plaintiff,

v.

**RTIC COOLERS, LLC, RTIC Drinkware,**
**LLC, RTIC Web Services, LLC,**
**Corporate Support & Fulfillment, LLC,**
**John Jacobsen, and**
**James Jacobsen,**
          Defendants

**Case No. 1:16-cv-00264-RP**
**The Hon. Robert L. Pitman**
**Jury Trial Demanded**

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY**
**INJUNCTION AND EXPEDITED HEARING**

## TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................... 1

II.  LEGAL STANDARD ............................................................................................... 2

III. ARGUMENT ............................................................................................................. 3

      A.   YETI Has Not Established a Likelihood of Success on the Merits ................3

      B.   YETI Will Not Suffer a Substantial Threat of Irreparable Injury if the Injunction Is Not Issued at this Time ...................................................................................6

      C.   The Balancing of Hardships / Injury Threatened .........................................10

      D.   The Public Interest .......................................................................................11

IV.  CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bulbs 4 E. Side, Inc. v. Ricks*,
 No. 4:14-CV-3672, 2016 WL 4208564 (S.D. Tex. Aug. 10, 2016) ........................................5

*Chemlawn Servs. Corp. v. GNC Pumps, Inc.*,
 690 F. Supp. 1560 (S.D. Tex.), *aff'd*, 856 F.2d 202 (Fed. Cir. 1988).......................................5

*Janvey v. Alguire*,
 647 F.3d 585 (5th Cir. 2011) ...................................................................................................3

*Kensington Partners v. Cordillera Ranch, Ltd.*,
 No. CIV SA98CA121DWS, 1998 WL 1782540 (W.D. Tex. June 16, 1998) ..........................3

*Lennar Pac. Properties Mgmt., Inc. v. Dauben, Inc.*,
 No. CIVA307CV1411G, 2007 WL 2340487 (N.D. Tex. Aug. 16, 2007)......................3, 8, 11

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
 469 U.S. 189 (1985)..........................................................................................................5, 6, 7, 8

*Petro Franchise Sys., LLC v. All Am. Properties, Inc.*,
 607 F. Supp. 2d 781 (W.D. Tex. 2009).................................................................................3, 8, 9

*Zyvex Corp. v. Starkewolfe*,
 No. CIV.A. 302CV0190G, 2002 WL 1359719 (N.D. Tex. June 18, 2002) .......................5, 11

**Statutes**

Copyright Act, 17 U.S.C. Section 504(c) ...................................................................................10

## I.    INTRODUCTION

The parties are involved in a series of lawsuits brought by the Plaintiff, YETI COOLERS, Inc. concerning allegations of violations of trade dress, among other claims, in various products including hard coolers, soft coolers, and tumblers or drinkware.

On January 18, 2017, YETI informed counsel for RTIC of an issue concerning a very small number of products that certain retailers had received that correctly had RTIC stamped on the bottom, but had YETI stamped on the body of the tumbler. Counsel for RTIC immediately began to investigate this allegation. Two days later, YETI filed this request for emergency injunctive relief concerning the accidental marking of the drinkware.  In that motion for preliminary injunction, the Plaintiff identifies only three specific examples of products that contained both an RTIC mark and a YETI mark.

YETI's motion for a preliminary injunction seeks an advantage in this litigation by portraying production errors in Asia involving a grand total of three (3) products accidentally mislabeled on the product itself by a third party with both the YETI and the RTIC logos, as intentional acts by Defendant RTIC to offer and to sell "counterfeit" YETI products.  To put this issue of counterfeiting into perspective, these accidentally mislabeled "counterfeit" YETI products were shipped in boxes clearly labeled with the RTIC mark. In addition, the products themselves were inside packaging that clearly said RTIC. Unfortunately, as the result of an accident made during the assembly during their manufacture, the products inside these RTIC packaging and shipping materials also contained a YETI mark.

RTIC sold over 450,000 units of lowball tumblers, bottles and can koozies in the 4th quarter of 2016 alone – clearly, the inclusion of the YETI mark in addition to the RTIC mark on

the three items the Plaintiff has identified was unintentional.   YETI filed this motion for immediate injunctive relief about 48 hours after YETI first provided notice of this issue to counsel for RTIC.   Since being made aware of this issue with the three mismarked products, RTIC has suspended the shipment of any additional products from the product lines which may be affected by this error.   RTIC suspended sales in order to conduct a visual inspection of every product in those product lines to insure that no other products erroneously have both the RTIC and YETI marks.   All relevant RTIC products will have been individually inspected by hand before any sales of those product lines resume.

In addition, with respect to future manufacture and production of these product lines, (and about which YETI might argue it could suffer some form of irreparable harm), RTIC has instructed its Chinese manufacturer to modify the mold used to create the "bottom" of the affected products in order to make it impossible for an RTIC "bottom" to be attached to a corresponding YETI tumbler body. Further, RTIC has ordered its Chinese manufacturer to destroy the prior mold and to substitute modified mold immediately.  This action will occur after the Chinese New Year holiday.  At this time, the facility is not manufacturing any product due to that holiday. RTIC took these immediate steps described above to eliminate the possibility for these isolated errors in the manufacturing process to recur. Therefore, given the steps RTIC has taken and is taking to remedy this situation, YETI cannot establish any irreparable harm in the future and it is not entitled to an injunction.

## II.   LEGAL STANDARD

A preliminary injunction may only be granted if Plaintiff meets its burden of establishing (i) "a substantial likelihood of success on the merits," (ii) "a substantial threat of irreparable

injury if the injunction is not issued," (iii) "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and (iv) "that the grant of an injunction will not disserve the public interest."  *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

A preliminary injunction is "an extraordinary remedy" and "the denial of a preliminary injunction is proper if the movant has failed to sufficiently establish any one of the four criteria." *Kensington Partners v. Cordillera Ranch, Ltd.*, No. CIV SA98CA121DWS, 1998 WL 1782540, at *5 (W.D. Tex. June 16, 1998) (citing *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990)).  In fact, "the preliminary injunction should not be granted unless the question presented by the litigant is free from doubt…."  *Lennar Pac. Properties Mgmt., Inc. v. Dauben, Inc.*, No. CIVA307CV1411G, 2007 WL 2340487, at *2 (N.D. Tex. Aug. 16, 2007).  "Because a preliminary injunction is an 'extraordinary remedy,' the movant must 'clearly carr[y] the burden as to all four elements.'"  *Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 787 (W.D. Tex. 2009) (internal quotations omitted).

### III.    ARGUMENT

#### A.    YETI Has Not Established a Likelihood of Success on the Merits

YETI has not established a likelihood of success entitling it to an injunction because there is no conduct for the Court to enjoin. Plaintiff has identified three products that had two marks, the YETI mark and the RTIC mark. Those three products are no longer in the marketplace. Plaintiff has not identified any additional products RTIC delivered to any third party or consumer with a YETI mark, so there are no products that either party is aware of in the market that are going to create any confusion.

YETI offered no evidence, because there is none, that RTIC intentionally placed the YETI mark on those three items, or that it instructed any third party to place the YETI mark on any of the three items, or that it intended for any retailer or consumer to be confused by the inclusion of a YETI mark. While intent is not a factor Plaintiff must prove to establish liability, it is important in the context of whether YETI can establish to this Court's satisfaction that it needs to enter any form of equitable relief to deter RTIC from similar conduct in the future. No such evidence exists here.

The only evidence YETI proffered in support of its claim that it is entitled to an injunction to prevent future conduct were the three products containing both the YETI mark and the RTIC mark. The evidence submitted with this response establishes that the tumbler bodies with the YETI mark were accidentally combined with RTIC-marked bottom caps RTIC's third-party manufacturer in Asia, and that it was done without the knowledge or consent of RTIC. It cannot be disputed that the products were shipped by RTIC in cartons that were emblazoned with the RTIC mark and that the product itself was wrapped in a liner with the RTIC mark.  None of the conduct related to the shipment of these three products, out of millions, evidences any intent by RTIC to ship products in the future that the Court need enjoin. To the contrary, as is fully established in this response, RTIC has undertaken to insure that these accidental markings are never made by its manufacturers again.

YETI argues that its mark has secondary meaning because RTIC allegedly intentionally copied the mark.  This argument fails because RTIC's alleged use of the YETI mark was unintentional. RTIC's manufacturer inadvertently used the mark in a few isolated instances.  The cases cited by YETI show that examples of intentional copying require more than YETI's

conclusory argument. In *Bulbs 4 East Side,* the defendant had previously been made aware of the trademark in a prior litigation, during which he promised to stop using the mark, and after which he continued using the mark. *Bulbs 4 E. Side, Inc. v. Ricks*, No. 4:14-CV-3672, 2016 WL 4208564, at *5 (S.D. Tex. Aug. 10, 2016). In *Chemlawn Services,* the defendant admitted to instructing a third party to make copies of Plaintiff's product. *Chemlawn Servs. Corp. v. GNC Pumps, Inc*., 690 F. Supp. 1560, 1568 (S.D. Tex.), *aff'd*, 856 F.2d 202 (Fed. Cir. 1988). The facts of these cited cases are completely different from the circumstances here, where RTIC's manufacturer in Asia inadvertently included the YETI mark on three products.

YETI cites to *Zyvex* for the proposition that a "plaintiff establishes a likelihood of success sufficient for an injunction when it owns a registered trademark and defendant is using that same mark." Mot. at 13. However, in that case the defendant was making pervasive use of the mark by using it in the domains zyvex.net and zyvex.com. *Zyvex Corp. v. Starkewolfe,* No. CIV.A. 302CV0190G, 2002 WL 1359719, at *3 (N.D. Tex. June 18, 2002). Here, defendant has never intentionally used the YETI mark, and upon being informed of these three products being shipped with the incorrect branding, it has taken steps to prevent any other similar events from occurring.

YETI cites *Park N' Fly, Inc.* to support its argument that federal registration "conclusively establishes" the validity of the YETI mark. Mot. at 4. This simply is not true. Federal registration establishes validity "subject to the conditions of § 15 and certain enumerated defenses." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189, 194 (1985). For example, obtaining the mark fraudulently, or abandoning the mark, would render a registered mark invalid. *Id.* Given the early stage of this case, any conclusions about the validity of the YETI mark are

premature.

**B.    YETI Will Not Suffer a Substantial Threat of Irreparable Injury if the Injunction Is Not Issued at this Time**

The prong of establishing irreparable harm is where YETI's request for emergency injunctive relief fails. The evidence establishes RTIC has suspended shipping products from the affected product lines until the completion of a visual inspection of the existing inventory to insure no products accidentally contain the YETI mark. RTIC has changed the mold so that during production this mistake cannot be repeated. YETI cannot establish that an injunction is necessary to prevent it from suffering any harm, irreparable or otherwise in the future. In sum, there is no conduct to enjoin.

RTIC disputes that YETI can establish that it has already suffered irreparable harm as the result of three discrete RTIC items, out of the millions sold and shipped, accidentally having been mislabeled during the manufacturing process. To the contrary, this situation is entirely "reparable." At the time of the production of these three items, and now, there are three major steps in the manufacturing of these product lines.  Those are the vacuum, testing and electrolysis stages. All of these steps are performed by third parties in China. The electrolysis process "cleans" the inside of the drinkware. *See, Declaration of Jenny Zhu.*  The primary manufacturer outsources this step to a specific physical location in China where many different electrolysis vendors have operations because electrolysis must be done in a controlled environment. *Id.* Both YETI and RTIC drinkware have the electrolysis process done at this same physical location, even if different vendors perform the electrolysis step. *Id.*

Once processed by one of the electrolysis processors at this facility, the items are

returned to the primary manufacturer of each brand in baskets or boxes in groups of 20. *Id.* Occasionally, the workers in the electrolysis factory return a basket that accidentally contains a product made by a different manufacturer in the 20 by mistake. *Id.* RTIC's manufacturer has a quality control group in place whose job it is to inspect the returned products to determine if the electrolysis process has occurred and if the inside is shiny enough. *Id.* These quality control employees only check the inside, therefore it is possible that they can make a mistake regarding the outside markings on occasion. *Id.* The next manufacturing step is attaching the processed drinkware bottom cap to the drinkware product. *Id.* This step is performed by hand. *Id.* On these three occasions, an RTIC-marked bottom cap was combined with a YETI body which was erroneously returned to the manufacturer by the electrolysis vendor. *Id.* After the bottom cap is added, the product is placed in a wrapper and in packaging to identify it as an RTIC product. *Id.* These packaged products are then boxed for shipment in containers labeled with the RTIC brand. *Id.* As a result of these errors, the three products with two different marks were shipped to the United States in RTIC packaging.

The question before the Court is whether, given the existence of these three items, the Plaintiff will suffer irreparable harm unless it is granted an injunction against RTIC. The answer is no. Upon being informed by YETI that its mark had accidentally been attached to a small handful of RTIC-marked products, RTIC suspended the sales and shipment of the affected product lines that could have the same issue. *Declaration of John Jacobsen*. After suspending sales and shipment, a new inspection process was put in place. *Id.* That visual inspection process is ongoing, and no products will be shipped until all inventory has been inspected. *Id.* Furthermore, RTIC has instructed its Chinese manufacturer to modify the mold used to create the

**Page 7**

"bottom" for the affected product lines. *Id.* This modification will make it impossible for an RTIC "bottom" to be attached to YETI tumbler body. *Id.* In addition, RTIC has ordered the prompt destruction of the old mold and the substitution of the modified mold. *Id.* This change will occur once the RTIC primary manufacturer resumes factory operations after the Chinese New Year holiday. *Id.* As a result of the Chinese New Year holiday, production of the affected product lines has been suspended and no new production will occur until the new molds are put into service. *Id.* All of these steps will insure that there will be no similar issues in the future, and YETI has suffered no irreparable harm.

One need only look at the *Lennar* case, which YETI relies on, to determine that the shipment of, at most, three individual products (out of millions of products that have been shipped) having a YETI mark in addition to the RTIC mark does not satisfy the high requisite for proving that YETI will suffer irreparable harm in the future absent an injunction. In the *Lenar* case, the defendant was continuing to use the mark, while here RTIC not only never intended to use the mark, but also it has already taken steps to inspect its existing inventory to insure that no products will be shipped if they accidentally contain an RTIC and a YETI mark, and have taken further steps with the manufacture to prevent any further accidental usage of the mark in the future. *Lennar Pac. Properties Mgmt., Inc. v. Dauben, Inc*., No. CIVA307CV1411G, 2007 WL 2340487, at *2 (N.D. Tex. Aug. 16, 2007) ("Because the defendant continues to maintain and operate the MYLENNAR.COM website … the plaintiffs have satisfied this prong….").

YETI relies on *Petro Franchise Sys., LLC v. All Am. Properties, Inc*., 607 F. Supp. 2d 781, 794 (W.D. Tex. 2009) (emphasis added) to argue that "irreparable harm exists upon a finding of likelihood of confusion."  Mot. at 17.  YETI mischaracterizes *Petro* – the Court in

*Petro* specifically noted that the 5th Circuit has left open the question of whether irreparable harm exists upon a finding of likelihood of confusion, and noted that "**If** a presumption of irreparable harm exists upon a finding of likelihood of confusion, Franchisees have not offered any evidence to rebut it."  RTIC has cited evidence to rebut this presumption. The the very small number of erroneous products were shipped in RTIC-labeled cartons inside RTIC-labeled sleeves. The products also had the RTIC mark stamped on them.

YETI also cites *Petro* in support of the proposition that there would be irreparable harm due to the possibility that "the marketplace [could] believe that plaintiff is sponsoring the defendant's business."   *Id.* at 795. But again that case is distinguishable, because the "[Defendants held] themselves out as Petro franchises, and promote[d] and reinforce[d] customers' beliefs that they are licensed by [Plaintiff]."  The facts in *Petro* could not be more dissimilar from the facts here. Absent these three mistakenly marked products, RTIC has *never* held itself out as being associated with YETI, and maintains its own trademark, brand, and website.

Citing *Petro*, YETI dismisses any harm to RTIC from the entry of an injunction because the "harm is self-inflicted."  But when the court in *Petro* referenced "self-inflicted" harm it was referring to the defendant's failure to meet its contractual obligations while still seeking to enjoy the benefit of those obligations (e.g., license to *Petro*'s trademark) – this is not at all the situation in this case.  *Petro Franchise Sys., LLC v. All Am. Properties, Inc*., 607 F. Supp. 2d 781, 797 (W.D. Tex. 2009). RTIC does not contend that it will endure any harm as the result of an injunction only requiring it to cease sales of YETI-marked products, it contends that a preliminary injunction enjoining such sales is wholly unnecessary as it has already proactively

**Page 9**

taken all steps necessary to prevent any other RTIC products being released into the public with a YETI mark.

Another valid consideration by the Court with respect to whether any future irreparable harm is the amount of statutory damages that might be imposed for the mismarked products that were shipped by RTIC. Some of the factors courts have considered under the Copyright Act, 17 U.S.C. Section 504(c) are: the expenses saved and the profits reaped by the defendant, revenue lost by the plaintiff, and whether the conduct was innocent or willful. YETI cannot establish that any expenses were saved by RTIC or that it reaped any profit from these three items. The conduct, while certainly unfortunate, was innocent on the part of RTIC. RTIC has proffered the declarations of two witnesses that establish that the three products identified by the Plaintiff as having the YETI mark were marked in that manner by mistake, and in spite of quality control efforts.  YETI can proffer no evidence that any of the three products, all of which were shipped in RTIC packaging and in an RTIC sleeve were intended to be sold as a counterfeit YETI product.

### C.    The Balancing of Hardships / Injury Threatened

Again, there is no need for the Court to address the issue of the balancing of hardships and/or the injury threatened. Assuming that RTIC successfully completes the inspection it has undertaken and makes the modification to the manufacturing process it has put in motion, YETI cannot articulate a reasonable threat that exists in the future absent an injunction. RTIC does not contend that it will encounter any hardships as the result of the Court enjoining sales of YETI-marked products.  However, YETI's requests for injunctive relief involving notice to retailers and consumers that RTIC sold "counterfeit" YETI products would create hardships for RTIC and

its reputation based on inadvertent human errors committed by third party vendors in Asia.  Most importantly, RTIC further contends that an injunction enjoining future sales of YETI-marked products is unnecessary because it has already taken every step possible to remedy the situation.

YETI cites to *Lennar* to support its claims that "Any benefits an infringer may receive from the improper use of a trademark do not outweigh the irreparable harm to the owner from infringement."  Mot. at 18.  First, this is simply a misstatement of the case – the court in *Lennar* performed a factual analysis and concluded that while Defendant's website would be out of business, a significant amount of that business was derived from improper use of Plaintiff's trademark.  *Lennar Pac. Properties Mgmt., Inc. v. Dauben, Inc*., No. CIVA307CV1411G, 2007 WL 2340487, at *3 (N.D. Tex. Aug. 16, 2007).  The facts in *Lennar* are distinguishable from the facts here because RTIC's inadvertent inclusion of YETI's mark on three products (out of millions) does not constitute a significant part of RTIC's business. But in addition, *Lennar* is irrelevant because RTIC has implemented safeguards against any additional products being sent into the stream of commerce with a YETI mark.

### D.   The Public Interest

Finally, YETI argues that "[t]he public interest also weighs in favor of grating [sic] an injunction" and cites *Lennar* as follows: "the public interest is served by terminating the improper use of trademarks and making such misconduct unprofitable so that the public will not be deceived or confused as to the source or sponsorship of the goods and services they consume."  Lennar, 2007 WL 2340487 at *3.  *See also Zyvex Corp.*, 2002 WL 1359719, at *4 (the public interest is served by protecting trademarks)."  There is no conduct on the part of RTIC related to the future use of the YETI mark to enjoin. Any use (including even accidental use as

**Page 11**

occurred here) by RTIC of the YETI mark has been terminated through the combination of additional inspections before shipment of any existing products and the modification of the manufacturing process for all future products.  RTIC has taken the additional step of destroying the mold that it has used in the past. In other words, any public interest that might be served through an injunction has already been served through RTIC's voluntary conduct and remedial actions.

### IV.    CONCLUSION

YETI has filed a motion seeking "emergency" relief from the Court for an injunction against RTIC using the YETI trademark in the future. YETI argues that early injunctive relief is "routinely granted to prevent ongoing use of a trademark." No such injunctive relief is necessary here, there will be no ongoing use of the YETI trademark by RTIC. RTIC has proffered uncontested evidence of the steps it undertook even prior to the filing of the motion to ensure that no products with an erroneous YETI mark in addition to the RTIC mark are released to the market. Sales and shipping have been suspended during the pendency of the inspection.   Prior to the Court setting a hearing, RTIC voluntarily instructed its primary manufacturer to modify the production molds for the bottom caps of the affected product lines to prevent future errors. That process will be implemented at the conclusion of the Chinese New Year Holiday, during which time no production is taking place. YETI seeks an injunction against RTIC to require it to do what it either already has done or is implementing now. Therefore, the Court should deny Plaintiff's request.

Dated: January 25, 2017                     Respectfully submitted,

                                            **FISH & RICHARDSON, P.C.**

                                            */s/ Thomas M. Melsheimer*
                                            **Thomas M. Melsheimer**
                                            Texas Bar No. 13922550
                                            melsheimer@fr.com
                                            1717 Main Street, Suite 5000
                                            Dallas, TX 75201
                                            (214) 747-5070 - Telephone
                                            (214) 747-2091 - Facsimile

                                            **Alan D. Albright**
                                            **Bracewell**
                                            Texas Bar No. 00973650
                                            alan.albright@bracewelllaw.com
                                            111 Congress Ave., Suite 2300
                                            Austin, TX  78701
                                            (512) 472-7800 – Telephone
                                            (800) 404-3970 – Facsimile

                                            **FISH & RICHARDSON, P.C.**
                                            **Neil J. McNabnay**
                                            Texas Bar No. 24002583
                                            mcnabnay@fr.com
                                            **P. Weston Musselman, Jr.**
                                            Texas Bar No. 14749600
                                            musselman@fr.com
                                            **Natalie L. Arbaugh**
                                            Texas Bar No. 24033378
                                            arbaugh@fr.com
                                            **Michael A. Bittner**
                                            ***(admitted pro hac vice)***
                                            Texas Bar No. 24064905
                                            bittner@fr.com
                                            **Ricardo J. Bonilla**
                                            Texas Bar No. 24082704
                                            rbonilla@fr.com

**Katrina Eash**
Texas Bar No. 24074636
eash@fr.com
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 - Telephone
(214) 747-2091 - Facsimile

**William T. "Tommy" Jacks**
Texas Bar No. 10452000
jacks@fr.com
111 Congress Avenue, Suite 810
Austin, TX 78701
(512) 472-5070 - Telephone
(512) 320-8935 - Facsimile

**Bailey K. Harris**
Texas Bar No. 24083139
bharris@fr.com
**Jackob Ben-Ezra**
Texas Bar No. 24073907
ben-ezra@fr.com
1221 McKinney St., Suite 2800
Houston, TX 77010
(713) 654-5300 - Telephone
(713) 652-0109 – Facsimile

**Elizabeth E. Brenckman**
**(admitted *pro hac vice*)**
New York Bar No. 5272042
brenckman@fr.com
601 Lexington Avenue, Floor 52
New York, NY 10022
(212) 641-2305 – Telephone
(212) 765-5070 – Facsimile

**Sheryl Garko**
***(admitted pro hac vice)***
Massachusetts Bar No. 657735
garko@fr.com
**Mark S. Puzella**
***(admitted pro hac vice)***

**Page 14**

Massachusetts Bar No. 644850
puzella@fr.com
One Marina Park Drive
Boston, MA 02210-1878
(617) 542-5070 – Telephone
(617) 542-8906 – Facsimile

**Sara Fish**
***(admitted pro hac vice)***
Georgia Bar No. 873853
sfish@fr.com
1180 Peachtree Street, NE
Atlanta, GA 30309
(404) 724-2846 – Telephone
(404) 892-5002 – Facsimile

**COUNSEL FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of January, 2017, I electronically filed the foregoing

using the CM/ECF system which will send notification of such filing to all counsel of record

who have registered with this Court's ECF system, and via first class mail to those counsel who

have not registered with ECF.

*/s/ Thomas M. Melsheimer*